RALEIGH, CHARLOTTE AND SOUTHERN RAILWAY COMPANY
v. W. H. McGUIRE.

(Filed 29 March, 1916.)

1. Appeal and Error—Railroads—Rights of Way—Easements—Reverter.

The question of whether the plaintiff railroad company had abandoned its right of way over the defendant's lands, so that, under the terms of its deed, it had reverted to the grantor thereof, cannot be raised for the first time in the Supreme Court on appeal; and in this case only by requested instruction that there was no sufficient evidence of abandonment, the burden of proof being on the defendant.

2. Railroads—Deeds and Conveyances—Rights of Way—Easements—Abandonment—Unequivocal Acts—Intent.

An abandonment by a railroad company of its right of way acquired by deed with provision that it would revert to the grantor, includes the intention to abandon in concurrence with the external acts by which such intention is carried into effect amounting to a relinquishment of the property, which must be positive, unequivocal, and inconsistent with the claim of title.

3. Railroads—Deeds and Conveyances—Rights of Way—Easements—Abandonment—Spur or Side Tracks.

Where a railroad company acquires a right of way over the lands of the owner by deed with provision that it would revert to the owner for nonuser for a stated period, and constructs and operates its main line thereon for a while, and then changes its main line of road to cross other lands, but continues to use the *locus in quo* for spur and side tracks in connection with its freight or other railroad business, the relocation of its main line, as stated, is not an act of abandonment which will forfeit the company's easement under its deed.

**4. Same—Permissive User—Leases.**

Permissive user or occupancy of a portion of a railroad company's right of way, not then used by the company for railroad purposes, or such por·tion leased by the company to its patrons in furtherance of its business, does not affect the company's title once acquired, and cannot be construed as an act of abandonment by the company under its deed providing that the title thereto will revert to the grantor in event of abandonment for a specified period.

**5. Appeal and Error—Railroads—Rights of Way—Easements—Abandonment —Deeds and Conveyances—Grantor's Intent.**

In an action by a railroad company to restrain the defendant from hindering and molesting the plaintiff's servants in discharging its duty in the prosecution of its business as a common carrier, where the rights of the parties are made to depend upon whether the plaintiff had aban-doned its right of way under the provisions of its deed thereto, it is re-versible error for the trial judge to make the decision upon the issue of abandonment depend upon the intention and conduct of the plaintiff's grantor.

**6. Instructions—Railroads—Easements—Rights of Way—Appeal and Error.**

Where a railroad company seeks to enjoin the interference of the defendant with the conduct of its business, raising the question of plain-tiff's abandonment of its right of way under the terms of its deed, it is reversible error for the trial judge to instruct the jury that the com-pany could have acquired but one right of way under its deed, and that the law presumed that it acted thereunder, there being no evidence to the contrary, when such instruction leaves out of consideration the evidence that while the plaintiff had changed its main line of road, it was still using the *locus in quo* for its legitimate railroad purposes, and had a right to acquire other lands for the purpose of its main line.

Hoke, J., concurs in the result.

Appeal by plaintiffs from *Peebles, J.,* at October Term, 1915, of Wake.

Civil action, tried upon these issues:

1. Did plaintiffs or their predecessor abandon the land in controversy, as alleged in answer of defendant? Answer: "Yes."

2. What damage, if any, has defendant sustained by wrongful acts of plaintiffs, as alleged in answer of defendant? Answer: "$40."

3. Are the plaintiffs the owners of a right of way extending 50 feet on each side of the center line of the railroad track in controversy, as alleged in the complaint? Answer: "No."

4. Did the defendant wrongfully interfere with the plaintiffs' use of said right of way, as alleged in the complaint? Answer: "No."

5. What damages are the plaintiffs entitled to recover of the defendant? Answer: "Nothing."

From the judgment rendered, plaintiffs appealed.

*R. N. Simms for plaintiff.*
*H. E. Norris, Manning & Kitchin for defendant.*

Brown, J.  The purpose of this action is to restrain defendant from constructing and maintaining a fence upon plaintiffs' right of way and from otherwise molesting and hindering plaintiffs' servants in using said right of way, delivering freight thereon, and otherwise discharging duties incumbent upon plaintiff as a common carrier.

The defendant denies many of the allegations of the complaint, but sets up a claim to a part of the right of way, being the part in controversy, and avers that the plaintiff and its predecessors "permanently abandoned the first location made by said Raleigh and Cape Fear Railroad Company (plaintiffs' predecessor in title) on and over said land of B. H. Fuquay, a part of which the said B. H. Fuquay sold and conveyed to this defendant."

The plaintiff claims title to its right of way under a deed from B. H. Fuquay dated 10 October, 1898, containing this clause: *"Provided, however,* that in case of a permanent abandonment of the said right of way or easement by said party of the second part, its heirs or assigns, or in case said right of way or easement is not located and used for the purposes aforesaid within five years from the date of this conveyance, then said right of way or easement and the land hereby granted is to revert to the said party of the first part, their heirs and assigns."

Plaintiff located its right of way within the time required, constructed a track thereon, and claims to have used this track for railroad purposes ever since.  The defendant claims the *locus in quo* by a deed from B. H. Fuquay dated 24 December, 1913, and seeks to hold the same as the grantee of Fuquay under the abandonment clause in plaintiffs' deed.  The evidence, as stated in the case on appeal, tends to prove that plaintiffs' predecessor constructed its main line on this right of way and used it continuously up to 1902 or 1903, when the railroad company extended its line southwardly, and for this purpose deflected at a point some 300 or 400 feet north of the lot in controversy, and took a new route to the westward at that point, and thence to the new Fuquay Springs station, and on to Lillington and Fayetteville, but that it continuously maintained and used the old track upon the lot in controversy on its right of way thereafter and until the present time as a spur track for the purposes above mentioned of handling cars and receiving and delivering freight.

The plaintiffs also offered evidence tending to show that when the new road above mentioned was built it did not encroach upon any land of said B. H. Fuquay other than that which was already included in the 50-foot strip extending on each side of the old main-line track, which had been built, as above mentioned, in 1898 or 1899.

The plaintiffs' testimony tended to show that as long as the railroad was upon any land owned by B. H. Fuquay the new track was within

50 feet of the center line of the old track, and when it got farther away from the old track than that distance it was upon lands of persons other than the said B. H. Fuquay.

The defendant offered evidence tending to show that when the railroad ran its new route, about 1903, a portion of its new track ran across a portion of B. H. Fuquay's land for a distance of something like 100 feet, and that thereafter the track on the land in controversy was mainly used for handling cars for shipment to or from the lumber plant of J. A. Sexton or the defendant's stave factory, located on the lot in controversy, and that the said B. H. Fuquay executed to the defendant the lease and deed mentioned in the pleadings.

There was no evidence that the railroad company has ever been hindered in using the railroad track upon the lot in question for any purpose until the defendant did so by building the fence, as alleged in complaint in 1913, and the evidence of both parties shows that from 1898 or 1899 until 1913 trains and cars had been during all of that time operated upon the tracks on the land in controversy.

There was evidence tending to show that during the year 1913 Tilley, Beck & Co., a corporation, had, without objection on the part of the plaintiffs, built a warehouse upon the lot in controversy, and on the east side of the track, for the purpose of receiving freight from the plaintiffs and delivering freight to them, and for no other purpose, and that the said warehouse had been so used for the purpose of expediting the business of the said Tilley, Beck & Co. with the plaintiffs in the handling of freight which had been or was to be shipped over the plaintiff's line of railroad, and that this caused no inconvenience to the plaintiff.

There was evidence tending to show that Dr. J. A. Sexton built a planing mill on the south end of the lot in controversy about 1900, and operated the same four or five years, shipping lumber in and out over the said track.

There was also evidence that several years before the commencement of this action the defendant had for a short while operated a stave mill on a portion of this lot in controversy, and had shipped freight in and out over the said track.

The plaintiffs offered the testimony of the president and general manager, Mr. John A. Mills, and his assistant, Mr. F. T. Ricks, who occupied said offices continuously from 10 October, 1898, until 1912, and also the testimony of a number of residents of Fuquay Springs, and in the vicinity of the land in controversy, tending to show an uninterrupted use by the railroads of the track upon the lot in controversy, continuously from its first construction in 1898 or 1899 to the time of the commencement of this action, and the maintenance of the track

upon said land, and the reception and delivery of freight from and to the public generally.

The above extracts, taken *verbatim* from the case on appeal, clearly explain the controversy. Whether there is any sufficient evidence of an abandonment by plaintiff of its right of way, embracing the lot in controversy, is a matter not presented by the record, and it cannot be raised for the first time in the Supreme Court. In this case it can only be raised by a prayer that the jury be instructed that there is no sufficient evidence of abandonment and that the first issue be answered "No," the burden of proof being upon the defendant to establish such abandonment.

This brings us to consider the essential elements of an abandonment. It includes both the intention to abandon and the external act by which such intention is carried into effect. There must be a concurrence of the intention with the actual relinquishment of the property. It is well settled that to constitute an abandonment or renunciation of a claim to property there must be acts and conduct positive, unequivocal, and inconsistent with the claim of title. Mere lapse of time or other delay in asserting the claim, unaccompanied by acts clearly inconsistent with the right, do not amount to a waiver or abandonment. 1 Cyc., 3; *Banks v. Banks,* 77 N. C., 186; *Faw v. Whittington,* 72 N. C., 321; *Miller v. Pierce,* 104 N. C., 391; *Boone v. Drake,* 109 N. C., 82.

The defendant contended that the plaintiff changed its main line and diverted it from the old right of way and relocated it by acquiring another right of way, and that it has entirely ceased to use the old right of way for all railroad purposes, thereby manifesting by its acts an unequivocal purpose to abandon it, and that therefore defendant, as Fuquay's grantee under the deed of 24 December, 1912, has the right to enter.

If the facts are found in accordance with this contention, the plaintiff would not be entitled to the relief asked. The plaintiff admits that the main line has been diverted from its former course and rebuilt on other land acquired from other parties, as the exigencies of its passenger traffic demanded it, but it avers that the old right of way covering the land in controversy has not been abandoned, that it has been continuously occupied up to the present as a spur track and such spur track is used daily by freight trains and cars in the handling and delivery of freight.

If these facts be true, there would be no abandonment, and plaintiff would be entitled to the relief asked. It is well settled that a railroad company does not abandon the land on which it has constructed its tracks so as to entitle the owner to revoke its license by ceasing to operate freight or passenger trains over it, where it continues to use it

for purposes incident to and connected with its business in operating the road. 33 Cyc., p. 223, and cases cited in notes; *Ft. Worth, etc., R. R. Co. v. Sweat,* 20 Tex. C. App., 543.

It is immaterial whether plaintiff acquired the land for its present main-line track from Fuquay or from other persons. It had a right to do so, and to divert its main line if thereby it increased its facilities to serve the public. It did not thereby forfeit and abandon that portion of its old right of way if it continued to occupy it with its track and to use such track for railroad purposes.

The fact that Tilley, Beck & Co., Sexton, this defendant, and others had been permitted to use and occupy a portion of the right of way does not constitute an abandonment.

The title of the railroad to the right of way, once acquired cannot be lost by occupancy as to any part of it by the lapse of time or by the occupation of its patrons. "A permissive use of a right of way by another, when no present inconvenience results to the company, is not a surrender of rights of property, and, indeed, to expel an occupant under such circumstances would be a needless and uncalled for injury." *R. R. v. McCaskill,* 94 N. C., 746.

In 33 Cyc., p. 191, note 30, citing *Ill. Central R. R. Co. v. Wathan,* 17 Ill. App., 582, it is held that a railroad company may permit its customers to erect elevators, corn cribs, etc., which facilitate its business.

In 33 Cyc., p. 393, note 23, citing *Michigan Central R. R. Co. v. Bullard,* 120 Mich., 416, it is held that a railroad may lease a portion of its right of way to a manufacturing company with a view of facilitating the securing of freight therefrom; *Gilliland v. Chicago, etc., R. R. Co.,* 19 Miss. App., 411, holding that a railroad company may lease a portion of its land for the erection of a grain elevator.

Same note cites *Roby v. N. Y. C. R. R. Co.,* 142 N. Y., 176, holding that a railroad company may lease a portion of its right of way for a coal yard and trestle, for the purpose of handling and receiving coal transported over the railroad company.

These propositions of law herein laid down were all presented by appropriate prayers for instruction, which the court failed to give.

Again, the learned judge inadvertently made the decision upon the issue of abandonment depend upon the conduct and intention of Fuquay, the grantor in the deed. This was clearly an error, and worked injustice to plaintiff. The issue should be determined by the acts of the railroad company, accompanied by its manifested intention to abandon.

The judge further instructed the jury that the Fuquay "deed did not allow but one right of way over Fuquay's land, and the railroad could not acquire a right of way except under that deed, and the law presumes

that the railroad company acted under that deed, and there is no evidence to the contrary."

That instruction is manifestly erroneous. Under the deed of 1898 the railroad company acquired only one right of way over Fuquay's land of a certain width, but, if its necessities or interests demanded it, had a right to acquire other land by purchase from Fuquay or any one else, and to construct its main track on it. It had a right to retain and use its old right of way and track for a spur track, siding, or any other legitimate railroad purpose, and also to construct additional side-tracks on it if its increased business required it.

For the errors pointed out, there must be a
New trial.

HOKE, J., concurs in the result.