## J. F. BRADSHAW v. HILTON LUMBER COMPANY.

### (Filed 5 May, 1920.)

1. **Eminent Domain—Railroads—Rights of Way—Charters—Public Use—Constitutional Law—Statutes.**

   The taking of private lands may only be authorized by statute under the provisions of our Constitution, when for a public use or interest, though full compensation may be provided for the owner.

2. **Same—Purchasers—Private Gain—Ultra Vires.**

   Where the constitutional power is given by valid statute to a logging or railroad company to exercise the right of eminent domain, and the corporation has condemned a part of its right of way with the intent to complete it and put it to a public use, it may not transfer this right to a purchasing corporation to which no statutory power was given, and enable the latter to hold and exercise it exclusively for its own private gain or benefit.

3. **Eminent Domain—Actions—Parties—Railroads.**

   The principle that only the State may bring an action to annul the charter of a corporation, has no application to an action for damages by the owner against a railroad company for illegally operating its railroad over his lands, exclusively for private gain and not for the public use or benefit, and to enjoin its continuance.

4. **Eminent Domain—Railroads—Purchasers—Ultra Vires—Intent.**

   Where a railroad corporation is being illegally operated over the lands of the owner by a lumber company for its exclusive private gain, and not for a public use or benefit, the question of intent with which it does so is immaterial and irrelevant.

5. **Eminent Domain—Railroads—Injunctions—Ultra Vires—Illegal Use.**

   The recovery of damages for a trespass is not the exclusive remedy of the owner of lands, in his action against a railroad corporation for illegally and continually operating over his lands for a private use, unauthorized by its charter and our Constitution, as an injunction may issue to prevent the continuous adverse user from creating the right to an easement and to avoid a multiplicity of suits.

CIVIL ACTION, tried before *Kerr, J.*, and a jury, at January Term, 1920, of DUPLIN.

The action is based upon the allegations that during the years 1913 to the year 1916, both inclusive, and continuously during said time, the defendant, Hilton Lumber Company, for its own private use, benefit, and advancement, unlawfully and wrongfully, and from day to day, entered upon and trespassed upon plaintiff's tract of land described in the complaint, and from day to day and continuously during said years often greatly damaged and injured the plaintiff's said tract of land.

The Hilton Railroad and Logging Company was chartered by ch. 42, Private Laws of 1901, and in the year 1906 the Hilton Railroad and

Logging Company filed its petition against J. F. Bradshaw, to condemn a strip of land 100 feet wide and 1,280 feet long. The Hilton Railroad and Logging Company alleged that it was necessary that it should acquire a right of way for the whole distance across plaintiff's lands, because the same was necessary in order to conduct and carry on the business of a public carrier, and that the Hilton Railroad and Logging Company intended and proposed in good faith to construct and operate forthwith, or as soon as practicable, a railroad for transporting freight and passengers from a point on the Atlantic Coast Line Railroad between Wallace and Teachey, near the 37th mile post, in a general direction toward and to a point at or near the village of Hallsville, Duplin County, and at present to build and construct six miles of said road to a point on the run of Island Creek, about one mile, more or less, east of the Wilmington and Kenansville public road, for the purpose aforesaid.

R. A. Parsley, secretary and treasurer of the Hilton Lumber Company, among other witnesses, testified: "We got out the charter for the Hilton Railroad and Logging Company in 1901. At that time the Hilton Lumber Company was already in existence, but it had not come to Duplin County, but it came in 1905 or 1906. There are three or four rights of way in that distance of nine or ten miles, which were condemned by the Hilton Railroad and Logging Company. All of the other rights of way were taken in the name of W. L. Parsley. The number of rights of way which were condemned for the distance of nine or ten miles by the Hilton Railroad and Logging Company is four. The strips condemned on each of the four are not connected. The Bradshaw, Harrell, and Batts are disconnected. After the condemnation of these four places the Hilton Railroad and Logging Company was asked to operate trains over the road and refused. A petition was filed in Raleigh before the Corporation Commission to require us to operate trains for public service. We declined to do so. We are not operating at all for the Hilton Railroad and Logging Company; the road is owned by the Hilton Lumber Company; the right of way is the Hilton Railroad and Logging Company's. For the purpose of getting a road on it and serving it the Hilton Lumber Company operates its trains over these rights of way, and there is no charge for hauling over it. The Hilton Lumber Company is operating trains over this line right now; it has continued to do so since it began in 1905, and it hauls logs for Hilton Lumber Company exclusively, and for no other person or corporation. The distances between the condemned tracts are as follows: Between Boney and Harrell is 817 feet; after leaving the Harrell land we cross the Boney land, Cicero Teachey, DeWitt Marshall, A. B. Farrell, and then come to the Batts' tract, and that distance is 7,157 feet, that is, from the Harrell northern line to the Batts southern line. The distance between the Boney tract and the plaintiff's tract is 817 feet."

The condemnation proceeding was held in 1908, and the Hilton Railroad and Logging Company has performed no other act in Duplin County, or elsewhere since that time, but the Hilton Lumber Company has used that right of way continuously for its private use since said date up to the present time, and now continues to use the same.

The contract, if any, between the Hilton Railroad and Logging Company and the Hilton Lumber Company was verbal.

The Hilton Railroad and Logging Company has never listed any property in Duplin County for taxation, or with the North Carolina Corporation Commission.

The following verdict was returned by the jury:

"1. Is the plaintiff, J. F. Bradshaw, the owner and in the possession of the lands described in the complaint? Answer: 'Yes.'

"2. Did the defendant, Hilton Lumber Company, unlawfully and wrongfully enter and trespass upon the plaintiff's said tract of land, as alleged in the complaint? Answer: 'Yes.'

"3. Does the defendant, Hilton Lumber Company, continue to unlawfully and wrongfully enter and trespass upon said plaintiff's tract of land, as alleged in the complaint? Answer: 'Yes.'

"4. Is the plaintiff's cause of action barred by the statute of limitation? Answer: 'No.'

"(2) Was the said trespass complained of a continuing one under the statute, section 395? Answer: 'No.'

"5. What damages, if any, is the plaintiff entitled to recover? Answer: '$150.'

Judgment was entered upon the verdict, which, among other things, granted a perpetual injunction against the unlawful acts of the defendant described in the pleadings and record. Defendant appealed.

*Stevens & Beasley for plaintiff.*
*E. K. Bryan and H. D. Williams for defendant.*

WALKER, J., after stating the facts as above: There was strong evidence tending to show that the logging road was chartered and the lumber road built for the sole use and benefit of the defendant, in order that it might haul its lumber over it for its own private purpose. So far as the logging road is concerned, it abdicated its public duty and assigned, under its contract with the defendant, all of its franchises, rights, and privileges under its charter, to the latter. This it had no power or right to do. The Hilton Lumber Company had no right of eminent domain, or right of condemning plaintiff's land or any other private property for its own use. Such property may be taken under the sovereign power for public uses, but not for those which are private. 1 Lewis

on Eminent Domain (3 ed.), sec. 250; *S. v. Lyle,* 100 N. C., 497; *S. v. Glen,* 52 N. C., 321; *Kenedy v. Erwin,* 44 N. C., 387. It must be conceded on all hands, and the numerous authorities upon the subject clearly demonstrate that the Legislature has no power, in any case, to take the property of an individual and pass it over to another without reference to some use inuring to the public benefit. Cooley Const. Lim. (6 ed.), p. 651. And the property of one individual cannot be taken for appropriation to the use of another, even for full compensation. If such a thing were done, it would be nothing but the exercise of arbitrary and despotic power and not according to the law of the land, as these words are employed in our Constitution, Art. I, sec. 17.

It appears in this case that the logging road company was chartered by the State with the right of eminent domain, and that it had condemned a right of way, but it never used it in the way contemplated by its charter, but turned all of its rights and privileges under it over to the defendant, who has used it for its own private purpose alone, and not at all for the public benefit. This is forbidden by law. The charter of the logging road has been perverted from the public use it was intended to subserve to a private use not contemplated by the Legislature, and not within its power to authorize. The case is so fully covered by the decision of the Court in Stewart's Appeal, 56 Pa. St., p. 413, that it will be quite sufficient for our purpose that we reproduce here what was said in that case about facts not merely similar, but substantially identical. The Court there stated, and relied on, the following principles:

1. A company authorized to build a railroad, and failing to obtain means, contracted with an individual to build a railroad solely for his own use on part of their route: *Held,* the company had no power to make such contract, and the individual could not build such road.

2. A bill in equity was brought against the individual who had constructed his road under the contract, to restrain him from working it, and to remove it, the company not being made party: *Held,* that the bill would lie against the defendant alone, for creating a nuisance to the plaintiff's property.

3. A single trespass, or several, not coupled with circumstances indicating that they were to be repeated continuously, is generally redressed by a common-law action. But where trespasses are constantly recurring, and threatened to be continued, they may be redressed by injunction.

4. Corporations cannot do anything outside of the powers expressly given in their charters, which are to be strictly construed.

5. The plaintiffs had brought an action for trespass against the defendant and another for breaking their close, constructing the road, etc.: *Held,* not to be in abatement of the bill, being a suit for recovery of damages for past trespasses, which is a different cause of action from a bill to prevent future trespasses.

In discussing the law, as applied to the special facts of that case, which are practically those of our case, the court, by *Chief Justice Thompson*, said: "If the New Castle and Franklin Railroad Company had power to let the portion of their road in question, to be constructed and used by a private party for private use exclusively, for an indefinite period, there is nothing to limit the principle to one such contract; there might just as well be fifty, and the whole line be farmed out to private purposes, in manifest disregard of the duty owing by the corporation to the State. The discretion which the company was to exercise in performing their undertaking under the charter would thus pass to parties to whose discretion the State committed no charge. Authority to make such a contract is not within the provision of the act of incorporation; and as it is without authority and against the policy of the law, it must be void. The authority to construct a road for the use of the public cannot be turned into an authority to construct a private road. Sometimes contractors agree for the profits of running a road as far as made, and just as made, for their own benefit, but always for the purpose of its charter, and never to exclude the public. That is not this case. The public are entirely excluded, not only by the kind of road and rolling stock on it, but by the agreement itself, and not only so, the right of eminent domain was exercised here, in substance and essence, for purposes that were private, and the plaintiff's property taken for such purpose. This was all wrong and requires to be redressed." It is further held in substance that the facts are all of one complexion and exhibit in detail and in entirety, a case in which it seems impossible to arrive at any other conclusion than that the proceedings and the construction of this little piece of road, in the manner described, was not intended as a part construction of the important undertaking with which the corporation were intrusted by the State, but merely colorable, with a view to put the defendant in possession of a right of way on which to build his own private railway, solely for the use of his mills and machinery, and in which the public could have no advantage whatever. There is no plan on which such a result can be achieved, without the violation of the principles of the Constitution and the rights of the citizen. With reference to the plaintiff's remedy to enforce a proper observance of his constitutional rights, the Court, in the *Stewart case,* said: "Perhaps, however, inasmuch as the corporation is not a party to the bill, the view we might take of the contract in this case, if it were, is not proper to be taken now. But this will not and ought not to prevent us from protecting the plaintiff's right to equitable interferences on other grounds. The corporation could not transfer its franchise, granted to benefit the public, to enable a private party to construct and maintain a private road for his own private use and benefit. *Jessup v. Loucks, supra.* If

the law be so, the defendant, in running the road in question, interrupting the plaintiff's right of free passage on the land, and creating a nuisance to the plaintiff's dwelling, has no protection under the agreement with the company, and his acts are contrary to law and prejudicial to the plaintiff's interests, and ought to be restrained. A single trespass, or several, not coupled with circumstances indicating that they were to be repeated continuously, are generally redressed by the common-law action of damages. But when they are constantly recurring, and threaten to continue, it is well settled that they may be redressed in equity by injunction, citing Story's Eq., secs. 925, 926, 927, and *Commonwealth v. P. & C. R. R. Co.,* 12 Harris, 159, and adding that there are numerous other authorities to support the proposition that it is an elementary principle now, and does not need support from other decisions, that neither a railroad corporation nor any other can lawfully do anything outside of the powers expressly given in their charters; *Com. v. Erie & N. E. R. R. Co.,* 3 Casey, 339, where the doctrines are stated, and the authorities in support of them fully set forth. The *Stewart case* seems to be perfectly parallel with this one, in all respects, both as to substantive law and the procedure by which it is enforced. The conclusion of the Court was stated in language which is directly pertinent to our facts, except as it appears that the judge of the lower court, who heard that case, dismissed the same, while the judge here granted the injunction.

"In the Supreme Court, on appeal, the Stewart suit was reinstated to the docket, the Court observing that the defendant, therefore, being without right or title in the occupancy of the land in question for the use of his railway, and the plaintiff's title in it admitted, it is manifest that the running of cars in and along it with steam locomotives, several times a day, creating dirt, dust, and smoke, is prejudicial to the plaintiff's property, and should be prevented. We must, therefore, reverse the decree of the court below, in dismissing the complainant's bill, and reinstate the same, with an order for a decree in accordance with these views and principles."

It is said in 10 Cyc., p. 1094: "Plainly a franchise possessed by a corporation cannot be transferred to an individual, unless it is such a franchise as an individual might hold and exercise. A franchise which is in its nature personal to the grantee already possessed of it, such as an exemption from taxation, cannot be sold to an individual; nor can a franchise to operate a railroad, since this would have the effect of turning a franchise granted for a public benefit into a mere means of private emolument; nor can a navigation company grant to an individual the privilege of taking water from its dams for private purposes. But, of course, the Legislature may authorize the sale of the franchise of a corporation to a natural person, and such a statute will not be unconstitutional."

There has been a great deal of discussion in the other States as to whether a railroad company can alienate its secondary franchise of constructing and of operating its railway to another, whether by sale, lease, or mortgage, without the express consent of the Legislature, but we need not further refer to this matter, as it is well settled that it may not do so, when the alienation is to a private person, and the intent and purpose is that it may be applied to his own personal use and emolument and not to the public benefit, except as the public may receive an advantage, indirectly and remotely, in a commercial way. The case of *Jessup v. Loucks,* 55 Pa. St., 350, lends strong support to our views. The defendant in this action is not the logging road, a public service corporation, but the lumber road, a private corporation, and the principle that a franchise illegally assigned by one corporation to another, or otherwise abused, or exceeded, can be annulled only in an action by the State against the offending corporation, or its alienee, does not apply, and, therefore, requires no consideration. The whole subject as to the power of alienation of its franchise by a public, or *quasi*-public corporation, owing duties to the public and enjoying the right of eminent domain, is considered in 10 Cyc., pp. 1093-1096.

What we have said would seem to be a sufficient discussion of the principles of law applicable to the facts of this case, which, so far as we have been able to ascertain, is, as it was presented, one without any analogous precedent in this State, though the general doctrine underlying the decision has often been adopted as the correct one, and is unquestionable. *R. R. v. Davis,* 19 N. C., 451, where it is said by *Chief Justice Ruffin:* "The right of public to private property, to the extent that the use of it is needful and advantageous to the public, must, we think, be universally acknowledged. Writers upon the law of nature and nations treat it as a right inherent in society. There may, indeed, be abuses of the power, either in taking property without a just equivalent, or in taking it for a purpose *really not needful or beneficial to the community;* but when the use is *in truth* a public one, when it is of a nature calculated to promote the *general* welfare, or is necessary to the *common* convenience, and the *public* is, in fact, to have the enjoyment of the property or of an easement in it, it cannot be denied that the power to have things before appropriated to individuals again dedicated to the service of the State, is a power useful and necessary to every body politic."

We should, perhaps, remark before closing that the payment of a consideration by the defendant to the logging road company does not alter the case, and is no excuse, or palliation for a violation of the law. *Gauley & S. R. Co. v. Vencill,* 73 W. Va., 650, and it can make no difference whether the law was violated without actual intent to do so or

ignorantly or whether it was done purposely or evasively. The fact remains that it was done to advance and promote the defendant's private interest, and this is sufficient as the basis of liability for damages and other relief. The exact form of defendant's intention is not material, for whatever the form in which the motive was conceived, the defendant has accomplished its purpose of unlawfully appropriating plaintiff's property to its private use. *Atlanta, etc., R. Co. v. Bradley,* 141 Ga., 740. He cannot do this by condemnation, even if he pays for it.

It is so well settled by the fundamental law that private property cannot be taken for private use that it is always assumed as a postulate, and no argument is needed to sustain it. A strict adherence to this rule is the only mode by which a corporation is to be held from diverting functions and rights acquired in the name of public necessity to private use, and doing indirectly what cannot be done directly. *Jessup v. Loucks, supra.* The wrongful use of the franchise or right thus acquired will subject the party guilty of it to an action for the resulting damage to the owner of the land condemned for public use. It was said in *Hales v. R. R.,* 172 N. C., 104, that an unwarranted use of a right of way in excess of the right granted will amount to a trespass, for which damages may be recovered, and, when the same is repeated and continuous, and especially when in the assertion of ownership, an injunction is a proper additional remedy, and this was said in regard to the wrongful use of a spur track by a railroad company, which had condemned the right of way on which the track was being laid. The action for damages was not the exclusive remedy. Injunctive relief is granted, as said in the *Hales case,* to prevent the continuous adverse user from creating the right to an easement, and to avoid a multiplicity of suits.

The court decided the question correctly, and we affirm the judgment. No error.