WILMINGTON FURNITURE COMPANY v. MAGGIE B. COLE, WIDOW, AND ELSIE COLE JONES, ESTHER SCHNIBBEN, ET AL., HEIRS AT LAW OF H. COLE, DECEASED; MAGGIE B. COLE, ADMINISTRATRIX, ROYAL INDEMNITY COMPANY AND FIDELITY AND DEPOSIT COMPANY OF MARYLAND, AND J. A. GAMBLE, RECEIVER OF COMMERCIAL NATIONAL BANK.

(Filed 27 February, 1935.)

1. **Evidence J b—Testimony of statements of purchaser at time of buying property are competent to establish parol trust.**

In an action to establish a parol trust it is competent for plaintiff to introduce evidence that at the time of the purchase of the property the purchaser declared he was buying it for plaintiff, and objection to the testimony in this case for that the witness testified that the purchaser stated that it was his purpose to acquire the property for plaintiff is untenable, it being obvious from the record that the word "purpose" was used to designate for whom the purchaser was acting in buying the property.

2. **Trusts A b—**

A resulting trust arises in favor of the party paying the purchase money for property, although legal title is conveyed to a third person, unless a contrary intention or contrary presumption of law prevents.

3. **Same—Evidence of parol trust held sufficient to be submitted to the jury.**

Evidence that the purchaser of property stated at the time of the purchase that he was buying the property for plaintiff, with evidence that thereafter the property was treated as belonging to plaintiff, and that plaintiff furnished the money for the purchase price of the property, *is held* sufficient to sustain the jury's finding that a parol trust was created in plaintiff's favor, although there was abundant evidence from which the jury could have found *contra.*

4. **Abandonment B b—Conflicting evidence on issue of abandonment of parol trust held for jury.**

Interveners contended that plaintiff abandoned its claimed parol trust in lands by payment of rent for the property to the person to whom legal title was conveyed, by allowing the holder of the legal title to refund to plaintiff a sum paid by plaintiff on a mortgage on the property, and by other financial transactions between plaintiff and the holder of the legal title. Plaintiff introduced evidence of other financial transactions between it and the holder of the legal title inconsistent with an intention on its part to abandon its claim against the property: *Held*, the conflicting evidence was sufficient to raise more than one inference as to plaintiff's intention to abandon its rights, and the evidence does not establish abandonment as a matter of law.

5. **Estoppel C a—Plaintiff held not precluded by principle of estoppel from claiming land in controversy.**

Plaintiff corporation sought to set up a parol trust in its favor in land conveyed to its president and owner of practically all of its stock, alleg-

ing the land was bought for it by its president and that it paid the purchase price. Interveners, creditors of the president of the corporation, contended that the corporation was estopped from setting up the parol trust by certain financial transactions and bookkeeping entries between it and its president, which were based upon the ownership of the land by the president of the corporation. The transactions relied upon transpired subsequent to the creation of the liability by the president of the corporation to the interveners. Plaintiff corporation was not indebted to interveners, and no question of fraud was raised: *Held,* the evidence is insufficient to preclude plaintiff corporation, as a matter of law, from claiming the land as against the interveners, since interveners could not have been misled by the transactions or induced thereby to alter their position to their damage.

CIVIL ACTION, before *Cranmer, J.,* at December Term, 1933, of NEW HANOVER.

The Wilmington Furniture Company is a corporation of North Carolina, and was organized in 1905, and since the date of organization engaged in the retail furniture business in Wilmington, North Carolina. The capital stock was $14,000, represented by one hundred and forty shares of the par value of $100.00 per share. Henderson Cole, prior to February, 1916, had acquired one hundred and thirty-seven of said shares, and on said date caused to be issued to his wife, Maggie B. Cole, forty-one shares, and ten shares each to eight of his children, and fifteen shares to a son, Henderson Cole, Jr.

Prior to 17 May, 1916, the American Bank and Trust Company of Wilmington was the owner of certain property known as 208 North Front Street, and at said time the said property was subject to the lien of a certain mortgage deed, dated 27 August, 1915, and duly recorded. Said mortgage deed was made by the Hanover Trust Company to the Massachusetts Mutual Life Insurance Company to secure an indebtedness of $20,000, evidenced by a note of said Hanover Trust Company. Thomas E. Cooper, president of the American Bank and Trust Company, testified at the trial: "If my memory serves me correctly, Mr. Cole, I believe, was secretary and treasurer or president of the Wilmington Furniture Company and the dominating factor. I sold him the property, as president of the bank, for $40,000. He was to pay $20,000 and assume responsibility for a mortgage which was given to some life insurance company. He was to pay $2,500 in cash and give a second mortgage for $17,500. (Q.) Did he tell you at the time for what purpose he was purchasing the property? (A.) Yes, sir. (Q.) What? (A) For the Wilmington Furniture Company. In pursuance to our agreement, Mr. Cole paid the $2,500 which he was to pay in cash and executed the deed of trust for $17,500. I think he paid $500 cash the day we agreed to sell it to him and paid $2,000 some days later. The

check you hand me, being No. 6377, amount $500.00, on the Wilmington Furniture Company, H. Cole, Secretary and Treasurer, dated 5 June, 1916, payable to the order of American Bank and Trust Company, was for the initial $500.00 payment to close the transaction. . . . The check which you hand me for $2,000.00, signed by the Wilmington Furniture Company, H. Cole, Secretary and Treasurer, . . . completed the $2,500 to be paid on the deal. . . . If he had requested me to give the deed to the Wilmington Furniture Company and take the deed of trust back, I don't think I would have had the deed of trust drawn that way. . . . I don't think I would have accepted it. I probably would have done it if he had demanded and insisted upon it, because, if we had deeded the property to the Wilmington Furniture Company and they had executed a mortgage it would have been given to the commercial agencies, and in that way it would probably have caused them to lose their rating in Bradstreet and Dun; and it was to my interest and the bank's interest that Mr. Cole keep up his credit, and so Mr. Cole could give a mortgage and it would not impair the furniture company."

There was evidence tending to show that the notes for $17,500, evidencing the balance of the purchase prise to be paid to the American Bank and Trust Company, "were charged to the Wilmington Furniture account and carried as a liability against them and not as against Mr. Cole. In other words, the entire transaction was handled as the Wilmington Furniture Company, with the approval of Mr. Cole."

Henderson Cole was a director of the American Bank and Trust Company of Wilmington, which was afterwards merged into the Commercial National Bank. Said Cole, together with other directors of said bank, on 18 October, 1922, procured the intervener, Royal Indemnity Company, to execute a depository bond to the Treasurer of North Carolina in the sum of $25,000. These directors also executed an indemnity agreement to protect said bondsman. As an inducement to the surety company Cole signed a financial statement representing that his net worth was $104,000, and including in his list of assets the equity in a store building known as No. 208 N. Front Street. In like manner Cole and the other directors signed an indemnity agreement indemnifying the intervener, Fidelity and Deposit Company of Maryland, in executing a depository bond of $15,000 with the Federal Land Bank of Columbia. The interveners, representing the Commercial National Bank, set up claims upon notes of $4,200, and $2,443.74, and $5,000.

Henderson Cole died on 15 December, 1922. After his death the plaintiff procured a public accountant to audit the business in the year 1922, and this audit tended to show that the property in controversy belonged to the estate of Cole, and an item of rent for the property

amounting to $5,000 a year was set up in the statement. The said auditor also installed a new set of books for the plaintiff and made an entry on the general ledger as of 1 January, 1923, showing a credit balance in favor of the Cole estate in the amount of $1,004.14.

Thereafter certain income tax reports were made by different field agents of the Government and the Craft report tended to show that the property in controversy was treated by the plaintiff as belonging to the estate of Henderson Cole, and this report was approved by the president of the plaintiff company.

Subsequent reports for the years 1919 to 1922 disclose that the said brick store building was listed as an asset of the company, and there was evidence that income taxes were finally paid on the basis that the plaintiff corporation owned the store building.

Thereafter Maggie B. Cole, administratrix, filed an inventory with the clerk as required by statute and included in such inventory as an asset of the estate of Henderson Cole one lot and store at 208 N. Front Street. Subsequent reports of the administratrix contain the same declaration.

In November, 1924, Maggie B. Cole, widow of the deceased, filed a petition for dower, alleging that at the time of his death her husband, Henderson Cole, owned a store building known as 208 N. Front Street. This dower proceeding was never completed.

On 7 June, 1923, the plaintiff instituted this suit against the defendants, alleging in substance that it had paid the entire purchase price of the property, and at the time the property was bought Henderson Cole created, by agreement with the owners of the property, a trust whereby the plaintiff was to become the beneficial owner of the property. Voluminous pleadings were filed by all parties and the matter was heard by a referee. Much evidence was offered before the referee, who conducted a number of hearings and who afterwards submitted a clear and comprehensive report containing detailed findings of fact and his conclusions of law thereon. The parties filed exceptions to the report, proffering pertinent issues and demanding a jury trial.

. The cause came to trial at the December Term, 1933, before Cranmer, J., who submitted the following issues:

1. "Was the real property described in the pleadings as '208 North Front Street' purchased by Henderson Cole, with the understanding and agreement that he would buy the same for the Wilmington Furniture Company, and hold same in trust for it?"

2. "Did plaintiff furnish the consideration for the conveyance to Henderson Cole of the property described in the pleadings?"

3. "Is the plaintiff estopped from claiming title to the said property as against the Royal Indemnity Company, the Fidelity and Deposit

Company, and Joseph A. Gamble, receiver of the Commercial National Bank, as alleged in the answer?"

The jury answered the first issue "Yes"; the second issue "Yes"; and the third issue "No."

From judgment upon the verdict the interveners appealed.

*Rountree, Hackler & Rountree and Carr, Poisson & James for plaintiff.*

*Nathan Cole and Herbert McClammy for defendants Cole.*

*I. C. Wright, Bryan & Campbell and Rodgers & Rodgers for Royal Indemnity Company, Fidelity and Deposit Company of Maryland, and J. A. Gamble, receiver.*

BROGDEN, J. The three primary and determinative questions of law presented by the appeal are:

1. Was there competent evidence of a parol trust?

2. Was such trust abandoned and the title to the property revested in Henderson Cole prior to his death?

3. Is the plaintiff precluded by the principle of estoppel from claiming title to the property?

The various methods of creating trusts were first epitomized in *Wood v. Cherry,* 73 N. C., 110. This case is the original ancestor of numerous offspring disclosed by subsequent decisions. However, the ancestor in clarity of concept and expression is still the peer of any of its legal children. It has been held that no particular form of words is necessary in order to create a parol trust, and that an oral declaration of trust, "made contemporaneously with the transmission of the title, may be established, even without a consideration." *Lefkowitz v. Silver,* 182 N. C., 339, 109 S. E., 56; *Williams v. Honeycutt,* 176 N. C., 102, 96 S. E., 730; *Blackburn v. Blackburn,* 109 N. C., 488, 13 S. E., 937; *Ferguson v. Haas,* 64 N. C., 772. In the *Ferguson case, supra,* this Court said: "Therefore, evidence of the acts, dealings, and declarations of the parties becomes competent to ascertain the nature and limits of the trust which is to be attached to the legal estate." It was also held in *Williams v. Honeycutt, supra,* that the declarations of a purchaser "made after the sale and transmission of legal title were competent to prove the previous agreement."

The chief evidence as to the declarations of Henderson Cole at the time of transmission of legal title to 208 N. Front Street was contained in the testimony of Thomas E. Cooper, president of the grantor bank. Mr. Cooper testified over objection that Henderson Cole told him at the time of acquiring the title that it was his purpose to purchase the property for the plaintiff Wilmington Furniture Company. The inter-

veners assert that the witness should not have been allowed to state the "purpose" of Cole in purchasing the property. Obviously, the word was used to designate for whom Cole was acting in the transaction, and hence the declaration was competent.

While there was abundant evidence upon which the jury might have found that no parol trust existed, nevertheless there was competent evidence of such existence, and the trial judge properly submitted the issue to the jury. Therefore, the first question must be answered "Yes."

The jury also found in response to the second issue, upon competent evidence, that the plaintiff furnished the consideration for the conveyance, and it is thoroughly settled that the payment of the purchase money raises a resulting trust in favor of him who furnishes or pays the purchase money, "unless a contrary intention or a contrary presumption of law prevents." *Tire Co. v. Lester,* 190 N. C., 411, 130 S. E., 45; *Wise v. Raynor,* 200 N. C., 567, 157 S. E., 853. There was abundant evidence, of course, upon which the jury could have answered the second issue "No."

The second question of law raises the question as to the evidence or means of proving or establishing the abandonment of a trust. The plaintiff corporation was owned and controlled by the family of Henderson Cole. He organized the corporation, managed it, directed its policy, financed its operations when necessary, and expanded it by wise management from its infancy until it became an important business concern. There is no evidence in the record that Henderson Cole was indebted to anybody at the time he acquired title to the property, nor was there evidence that the corporation was insolvent at that time, or at any subsequent time.

The interveners apparently proceeded upon the theory that Mr. Cole, during his lifetime, considered the property as his own and dealt with it accordingly, and that after his death, when it was discovered that he had signed indemnity agreements in the sum of $40,000 to protect the interveners in giving depository bonds, his heirs at law, who were the stockholders of the corporation, undertook "to get their fodder out of the rain" by setting up a parol trust, so as to wrench the title of the property out of Henderson Cole and put it in the corporation, where the interveners could not reach it. The jury could have inferred the facts to have been as the interveners contended, but it is apparent that in answering the first and second issues as shown by the record that it did not follow or adopt the theory of the interveners.

The interveners further contend that, even if the title was originally vested in the plaintiff corporation, it abandoned the title resulting in revesting the same in Henderson Cole. This idea of abandonment is based upon (a) payment of rent to Cole during his lifetime for five

months preceding his death in 1922; (b) a certain payment of $600.00 on the mortgage indebtedness of the property, which sum was apparently refunded to the plaintiff by Cole; (c) various checks for salary to Cole as an officer of the corporation; (d) various checks issued by the corporation and placed to the credit of Cole.

The pertinent decisions in this State are to the effect that an abandonment may be express or implied. Discussing the subject in *Banks v. Banks,* 77 N. C., 186, this Court said: "To constitute an abandonment or renunciation of claim there must be acts and conduct, positive, unequivocal, and inconsistent with their claim of title. Nor will mere lapse of time or other delay in asserting his claim unaccompanied by acts clearly inconsistent with his rights, amount to a waiver or abandonment." See, also, *Faw v. Whittington,* 72 N. C., 321; *Aiken v. Ins. Co.,* 173 N. C., 400, 92 S. E., 184; *R. R. v. McGuire,* 171 N. C., 277, 88 S. E., 337. The *McGuire case, supra,* states the principle as follows: "This brings us to consider the essential elements of an abandonment. It includes both the intention to abandon and the external act by which such intention is carried into effect. There must be a concurrence of the intention with the actual relinquishment of the property. It is well settled that to constitute an abandonment or renunciation of a claim to property there must be acts and conduct, positive, unequivocal, and inconsistent with the claim of title."

Did the corporation intend to abandon the title? Could more than one inference be drawn by reasonable minds from the various dealings between Cole and the corporation? Upon these questions the evidence was conflicting. Therefore, abandonment became an issue of fact to be determined by a jury. *Harper v. Battle,* 180 N. C., 375, 104 S. E., 658. While no issue as to abandonment was submitted to the jury, nevertheless, it cannot be said that the various items of evidence established abandonment of title as a matter of law.

The third proposition of law invoking the principle of estoppel stands practically upon the same footing as the contention with respect to abandonment. After the death of Mr. Cole a new system of bookkeeping was inaugurated by the plaintiff and a statement of the business dealings made, which did not include the land in controversy as an asset of the corporation, and which showed a balance due by the corporation to the estate of Cole in the sum of $1,004.14. There were also certain income tax reports submitted by the corporation, which tended to show that at one time the title to the property was deemed and considered as a part of the estate of Henderson Cole and at another time the property of the corporation. In interpreting such evidence it must be borne in mind that the plaintiff corporation was under no obligation to the interveners, and that these book entries and income tax reports were made

after the death of Mr. Cole and after the interveners had assumed liability on the depository bonds hereinbefore mentioned. There was no issue of fraud or bad faith, and the case was not tried upon such theory. Manifestly, the interveners were not misled nor induced to extend credit to Henderson Cole upon the strength and credibility of such entries and dealings. See *Wells v. Crumpler,* 182 N. C., 350, 109 S. E., 49, and *Boddie v. Bond,* 154 N. C., 359, 70 S. E., 824. The fourth, fifth, and sixth elements as therein classified are as follows:

(4) The party estopped "must intend or expect that his conduct or representations will be acted on by the party asserting the estoppel or by the public generally."

(5) "The representations or conduct must have been relied and acted on by the party claiming the benefit of estoppel."

(6) "The party claiming the benefit of estoppel must have so acted, because of such representations or conduct, that he would be prejudiced if the first party be permitted to deny the truth thereof."

The jury, in answer to the third issue upon a correct charge, found that the plaintiff was not estopped as against the interveners. Obviously, a different situation would be presented if the controversy was between the plaintiff and the heirs at law of the estate of Henderson Cole.

There are one hundred and thirteen exceptions and a voluminous record, and it would be wholly impossible to undertake to discuss all of these exceptions. A careful and patient examination of the entire record leads the Court to the conclusion that the question has been fairly tried, according to correct principles of law, and the jury, in the face of sharp divergence and irreconcilability of evidence, adopted the theory and contentions of the plaintiff.

Affirmed.