HOWARD M. ALLEN AND W. G. ALLEN, JR. v. MARTIN MARIETTA CORPORATION

No. 753SC249

(Filed 6 August 1975)

**Railroads § 3— lease of right-of-way to private corporation**

The lease of a railroad right-of-way to a private corporation did not constitute an illegitimate private use of a right-of-way originally acquired for a public purpose where the right-of-way was not abandoned by the railroad, but the railroad retained the right to use the right-of-way to serve other industry, the railroad retained the right to terminate the lease if it obtained authority from the Interstate Commerce Commission to operate as a common carrier over the right-of-way, and the railroad entered the lease with the view of securing freight from the private corporation's operations.

APPEAL by plaintiffs from *Webb, Judge.* Judgment entered 1 November 1974 in Superior Court, PITT County. Heard in the Court of Appeals 28 May 1975.

Plaintiffs instituted this action to recover damages for trespass. They alleged that defendant wrongfully entered and trespassed upon their land by operating a locomotive hauling gondola cars along tracks across plaintiffs' land.

The following are undisputed facts presented by the pleadings and stipulations: The railroad bed and tracks were built shortly after 1900 by the East Carolina Railroad Company as a mainline track between Tarboro and Farmville, running through Fountain. In 1965 East Carolina Railroad Company conveyed the right-of-way and tracks to Atlantic Coastline Railroad Company. On 1 January 1967 Atlantic Coastline Railroad Company conveyed the right-of-way from Fountain to Farmville to the Norfolk Southern Railway Company. Norfolk Southern Railway Company entered into a written agreement dated 1 January 1967 with defendant, said written agreement being attached to

Allen v. Martin Marietta Corp.

defendant's answer filed in this case. The rail distance between Fountain and Farmville is approximately six miles. Defendant purchased from Atlantic Coastline Railroad Company the tracks, crossties, and bridges located on the right-of-way conveyed by Atlantic Coastline to Norfolk Southern. Defendant is a private corporation and operates a rock quarry near the town of Fountain. Defendant has transported crushed stone in railroad gondola cars by means of a locomotive from its quarry site near Fountain along the tracks over plaintiffs' property to a connecting point with Norfolk Southern Railroad tracks at Farmville.

By stipulation the parties agree that the central issue in this case is whether defendant may utilize the land of plaintiffs with its own tracks, crossties, trestles, and locomotive engine under the written agreement attached to defendant's answer, and thereby insulate itself from liability to plaintiffs for the entry upon plaintiffs' land.

Plaintiffs and defendant each made a motion for judgment on the pleadings. These were treated by the trial court as motions for summary judgment. The trial judge denied plaintiffs' motion and allowed defendant's motion. The pertinent conclusions of the trial judge are as follows:

"2. That the lease between Norfolk Southern Railway Company and Martin Marietta Corporation is a valid lease.

"3. That the right-of-way of Norfolk Southern Railway Company from Fountain to Farmville is leased as an industrial spur track and, as a matter of law, such is a legitimate use of railroad property for railroad purposes.

"AND IT APPEARING that the plaintiffs' motion should be, and the same is hereby denied, and it further appearing that the defendant's motion should be granted, and the same is hereby granted. . . . "

Plaintiffs appealed.

*H. Horton Rountree, and James, Hite, Cavendish & Blount, by Kenneth G. Hite, for plaintiffs.*

*Joyner & Howison, and Speight, Watson & Brewer, by W. T. Joyner, Jr., and Odes L. Stroupe, Jr., for defendant.*

BROCK, Chief Judge.

Those portions of the written agreement between Norfolk Southern Railway Company as lessor and defendant as lessee, dated 1 January 1967, which seem pertinent to this controversy are as follows:

"WITNESSETH: THAT WHEREAS Atlantic Coast Line Railroad has conveyed to Norfolk Southern Railway Company a portion of the right-of-way formerly operated as a part of the East Carolina Railway which said right-of-way conveyed to Norfolk Southern Railway Company runs from the tracks of Norfolk Southern Railway Company at Farmville, N. C., to a point near Fountain, N. C., and on which right-of-way there is located a railroad track; and

"WHEREAS the Lessee owns and is presently operating a quarry near Fountain, N. C., and plans to use the premises herein leased and the tracks located thereon as an industrial track between its quarry near Fountain and the Norfolk Southern tracks at Farmville; and

"WHEREAS the Lessee has purchased the rails and crossties located on said leased premises and plans to purchase or lease an engine and move cars of stone from its quarry near Fountain for delivery to the Norfolk Southern at Farmville; and

"WHEREAS Lessor desires to obtain the rail traffic which will be generated by the operation of the quarry near Fountain, North Carolina.

"Now, THEREFORE, in consideration of the premises and in further consideration of the rental hereinafter provided for and the other covenants and conditions hereinafter set forth, the Lessor does hereby demise and lease unto Lessee all of its rights in the property and right-of-way located in Pitt County, North Carolina, and more particularly described in deed dated ____ day of _____, 1966, from the Atlantic Coast Line Railroad to the Lessor and recorded in Book ____, Page ____, in the Office of the Register of Deeds of Pitt County.

.   .   .   .

"4. In connection with outbound shipments delivered by Lessee to Lessor at Lessor's tracks at Farmville, N. C., and in connection with inbound shipments delivered by

Lessor to Lessee on the tracks on the demised premises, it is understood and agreed that Farmville, N. C., will be the origin point or destination point for such shipments from the railroad standpoint.

"5. Upon the giving of ninety (90) days' written notice to the Lessee, the Lessor may terminate this Lease in the event Lessor should ever seek to obtain and obtain authority from the Interstate Commerce Commission, (and/or from such other public body from which such authority must be obtained), to operate as a common carrier railroad over the property covered by this Lease, in which event the Lessor shall have the right and option to purchase all of the tracks, crossties, bridges, or other improvements on the demised premises at a price to be agreed upon between the parties, which option may be exercised by the Lessor by giving to the Lessee written notice within thirty (30) days after obtaining such authority to operate as a common carrier.

. . . .

"Lessee agrees that it will never seek to become a common carrier to operate over the property covered by this lease nor be a party to any plan to establish a common carrier operation over the property covered by this lease.

. . . .

"7. The maintenance of the right-of-way, and of the track, crossties, bridges and other improvements located thereon shall be the sole responsibility of the Lessee.

"8. The Lessor shall have the right to use the tracks located on the leased premises as an industrial spur track to serve any other industry which is or may be located along said line provided:

"a. There is constructed at no expense to the Lessee a spur track to serve such industry.

"b. The Lessor will operate over the demised premises at all times so that the track will be clear except when an engine of the Lessor is actually moving over said track.

"c. The Lessor will operate its engine and cars on said track only at such times as will not interfere with the operations of the Lessee and before operating such engines and

cars on said track the Lessor will notify the Lessee and obtain its permission to operate at the particular time.

. . . .

"11. The Lessee shall pay all ad valorem taxes assessed against or attributable to the demised premises or any improvements located thereon.

"12. The Lessee shall not permit or authorize the use of the demised premises by or for the benefit of any other person, firm or corporation not a party hereto and Lessee shall not sublease or assign this Lease without the prior written consent of the Lessor."

Plaintiffs argue essentially that Norfolk Southern had a right to use the right-of-way across plaintiffs' land for purposes consistent with its duty as a common carrier. However, when Norfolk Southern entered into an agreement with defendant, a private corporation, whereby defendant could privately use the right-of-way which had been condemned for public use, there was a perversion from the public use it was intended to serve to a private use. Condemnation of land was not intended by the legislature to be for other than public use, and therefore the agreement is unlawful and void. Plaintiffs contend that the principles in *Bradshaw v. Lumber Co.,* 179 N.C. 501, 103 S.E. 69, are controlling in this case.

Defendant argues essentially that the agreement does not constitute a change from a public use to a private use because (1) the use by defendant generates freight for Norfolk Southern, a common carrier, at Farmville; (2) Norfolk Southern retains the right to use the right-of-way to serve other industry; and (3) Norfolk Southern retains the right to terminate the agreement if Norfolk Southern obtains authority from the Interstate Commerce Commission to operate as a common carrier over the right-of-way covered by the agreement. Defendant contends that the principles in *Railroad v. McGuire,* 171 N.C. 277, 88 S.E. 337, are controlling in this case.

In *Bradshaw* the Hilton Railroad and Logging Company (Logging), pursuant to its charter, condemned land belonging to the plaintiff Bradshaw, ostensibly for the purpose of conducting and carrying on the business of a public carrier. It proposed to construct and operate a railroad for transporting passengers.

After condemnation of the Bradshaw land, Logging Company was asked to operate trains for public service over the

road. It refused, stating that it was "not operating at all for the Hilton Railroad and Logging Company." The road was owned not by Logging Company, but by the Hilton Lumber Company. (The contract, if any, was verbal.) Logging Company owned only the right-of-way. Trains were operated over the road solely for the private use of the Hilton Lumber Company. Bradshaw got a judgment granting "a perpetual injunction against the unlawful acts" of the Lumber Company, and the Supreme Court affirmed.

*Bradshaw* was decided on the ground that "[t]he charter of the logging road [had] been perverted from the public use it was intended to subserve to a private use not contemplated by the Legislature, and not within its power to authorize." 179 N.C. at 504. In our view the case stands solely for the proposition that an injunction will issue against a taking of property for private use. The key fact in *Bradshaw* is that a fraud upon the public was committed when the logging road was chartered and built for the private use and benefit of the Hilton Lumber Company, and not for purposes incident to and connected with the Hilton Logging Company's business operations. We are of the opinion that *Bradshaw* is not dispositive of this appeal.

We do find *McGuire* applicable to the facts of this case. There the Court focused on the question of abandonment of a right-of-way originally purchased by the plaintiff railroad. (We are not able to tell from the record whether the right-of-way in controversy originally was condemned or purchased.) The deed to the railroad provided that the property should revert to the grantor, one Fuquay, in case of permanent abandonment. The right-of-way line was used as a main route for several years until a new main route was constructed north of it. The older route was then used as a spur track. The defendant, who had purchased the property of Fuquay and claimed the right-of-way under the abandonment clause, built a fence across the tracks. The Supreme Court awarded a new trial on plaintiff railroad's appeal from an adverse judgment.

The critical inquiry to be made in this case, as in *McGuire*, concerns the question of abandonment. The facts do not indicate that the right-of-way originally was acquired solely for the private use of a business enterprise, as was the case in *Bradshaw*. Because there was a legitimate public purpose when the right-of-way first was acquired in 1900, and because the right-of-way was used by railroad companies for 67 years, and still

is being used, the situation described in *Bradshaw* does not present itself here. There has been no fraud on the public. Accordingly, abandonment thus becomes a condition precedent to any finding that the right-of-way is being used for an illegitimate, private purpose by defendant Martin Marietta.

To constitute an abandonment, there must be both the intent to abandon and a manifestation of that intent. In *McGuire* the Court recognized that abandonment is not found solely because a railroad leases "a portion of its right of way to a manufacturing company with a view of facilitating the securing of freight therefrom. . . . " 171 N.C. at 282. Indeed, it is well established that leases of a right-of-way to private businesses do not constitute an abandonment where the leases reserve a right to terminate if the land is needed for railroad purposes. *See generally* Annot., 95 A.L.R. 2d 468, 492 (1964), and the cases cited therein. The railroad, as lessor, still retains control over the right-of-way, which, although leased, can be used for a public purpose. The use of the land by the lessee is not wholly incompatible with the use of the land for railroad purposes.

The lease agreement between Norfolk Southern Railway Company and Martin Marietta is sound evidence that (1) the right-of-way has not been abandoned, and (2) there is no resultant private use as in *Bradshaw*. The lease states that Norfolk Southern entered into the agreement because it desired to obtain rail traffic generated by Martin Marietta's operations. It provides that, for railroad purposes, Norfolk Southern may terminate the agreement on 90 days' notice, in which event it has the right to purchase the tracks, crossties, and bridges on the route. Norfolk Southern has also reserved to itself in the lease agreement the right to use the tracks as an industrial spur track to serve other industry. There is clearly no evidence of an intention to abandon the right-of-way, and, consequently, no illegitimate private use.

In *McGuire* the Court stated that it was sufficient if the railroad company used its right-of-way "for purposes incident to and connected with its business. . . . " 171 N.C. at 282. This is the case here. The use of the right-of-way is a legitimate use of railroad property for railroad purposes.

Affirmed.

Judges PARKER and HEDRICK concur.