R. R. MILLER AND WIFE, LOUISE MILLER; E. L. MILLER, JR., AND WIFE, MARION K. MILLER; AND DELIA M. ZIMMERMAN v. MARY RUTH TEER AND HUSBAND, H. O. TEER.

(Filed 7 January, 1942.)

**1. Deeds § 13a—**

An unlimited conveyance of the beneficial use of property carries with it the *corpus* and, in proper cases, may be regarded as a conveyance in fee.

**2. Same: Easements § 1—Consent judgment held to convey only easement for ingress and egress and not the fee.**

Plaintiffs and defendants own adjoining buildings. A portion or strip of defendants' building, adjacent to plaintiffs' building, is occupied by a stairway. The parties' predecessors in title after controversy as to the ownership of this strip, there being a lappage in their respective deeds, entered into a consent judgment which stipulated that each party owned the land not covered by the lappage and that the stairway leading to the second floor of both buildings should remain for the joint and common use and unobstructed enjoyment of both parties, and further that the said contested strip and the stairway therein should be used only for ingress and egress by the said parties. *Held:* The consent judgment does not purport to, and does not have the effect of, conveying the fee in said strip of land, but only an easement for ingress and egress, and did not constitute the parties to the judgment tenants in common in the fee in the described portion or strip of land.

**3. Boundaries § 1—**

The location upon the land of the boundary line called for in a deed is for the determination of the jury, and the Supreme Court upon appeal has no power to determine the conflicting contentions of the parties as to the location of such line. Further, in this case plaintiffs announced in open court that they made no claim of title to the *locus in quo*.

**4. Easements § 8—**

While perhaps an easement constituting an interest in land may not be released by parol except upon the principle of estoppel, such easement may be abandoned.

MILLER *v.* TEER.

**5. Same—**

In order to effect an abandonment of an easement there must be an intention to relinquish the interest accompanied by acts and conduct which are positive, unequivocal and inconsistent with the assertion of the easement and which indicate and prove the intent to abandon.

**6. Same—**

Since intent is an essential element of abandonment of an easement, the question of abandonment is necessarily for the jury.

**7. Same—**

The owner of the dominant tenement, having an easement over the servient tenement to use a passageway and stairway between the buildings on the respective properties for ingress and egress, expressed an intent to abandon his easement to obviate future litigation, and bricked up and plastered the doorway in his building which gave access to the stairway. *Held:* His acts were unequivocal and inconsistent with the assertion of the easement and sustain the finding of the jury that he had abandoned same.

APPEAL by plaintiffs from *Grady, Emergency Judge,* at Pine Crest, in Craven County, 18 August, 1941. From DURHAM.

The plaintiffs and the defendants, respectively, are the owners of adjoining properties on East Main Street in the city of Durham, on which commercial buildings were erected and have existed since many years prior to 1902. Between the two buildings there is a narrow area or strip, some sixty-five feet in length and a few feet wide, the subject of controversy. It contains a stairway, built close to the brick walls of plaintiffs' building and leading up to the second floors of both buildings, and an interior "plastered wall" along the other side of the stairway, extending from the basement of defendants' building to the second floor. This narrow strip between the buildings is referred to as a "passageway" and was formerly used by both plaintiffs and defendants for purposes of ingress and egress in connection with both buildings and for access to the second floors. Suitable doors opened from plaintiffs' building upon the hall to which the stairway gave access.

Early controversies arose with respect to the ownership and use of this "passageway" or "strip," caused, in part at least, by the fact that there was, apparently, an overlappage in the descriptions contained in some of the title deeds under which the respective properties were held.

This action was begun by plaintiff to secure judicial determination of their rights, and for a judgment requiring the defendants to open up the passageway, which plaintiffs contend they have wrongfully closed, and to permit its use by plaintiffs, and to recover damages accrued to plaintiffs while they were denied its use. Defendants deny that plaintiffs' predecessors in title ever had, or that plaintiffs now have, any fee simple interest in the passageway, and aver that such easement in its use as

their predecessors in title formerly had and exercised was tolled, abandoned, and extinguished by the former owners, did not pass to plaintiffs, and cannot now be revived.

A brief history of the derivation and succession of title, and litigation respecting the *locus in quo* is necessary to an understanding of our decision, and the application of the law to the facts. For convenience of reference we will sometimes refer to the plaintiffs' property as the Massey lot, or Massey building, and the defendants' property as the Barbee building, or Barbee lot.

Plaintiffs derive their title by *mesne* conveyances from Rufus Massey, who owned that property prior to 1902, and defendants derive theirs by *mesne* conveyances from W. R. Barbee and wife, Virginia Barbee, who owned the Barbee lot prior to that date. But both plaintiffs and defendants claim under R. H. Wright—the plaintiffs by inheritance and the defendants by deed—who appears as *mesne* grantor in both chains of title. It is upon the conduct and accompanying explanatory declarations of R. H. Wright while he was in the management of both properties that defendants rely as an abandonment of the easement in the passageway, which easement he then held as owner of the dominant tenement, the Massey property.

R. H. Wright acquired the Barbee property 22 July, 1911, by deed from W. R. Barbee and wife, Virginia Barbee. The description in this deed calls for the brick wall of the Massey building as the boundary on that side covering the contested area. It provides that the transfer is "subject to all rights of Rufus Massey in the use of the stairway between his building and the building on the lot above described."

On 21 June, 1917, Wright conveyed the property, by the same description and with the same provisions, to Mary Ruth Wright, now Teer, and one of the defendants, for life with remainders. The interest in remainder is represented by the other defendants. Mary Ruth Wright was the daughter of a deceased brother of R. H. Wright, reared in the household of the grantor, and the consideration is love and affection. Wright continued in the management of the property for his niece down to the time of his death.

Rufus Massey died 21 June, 1919, and on 20 January, 1920, his heirs at law conveyed the Massey lot to Gregory Sales Corporation by a description, which, on the side next the Barbee lot, calls for "Massey's line," which plaintiffs claim covers part, at least, of the contested area, and at least the stairway. It contains the following exception to the warranty:

". . . And the parties of the first part do not warrant and defend the title to a strip of land beginning at a point at the property line on the south side of Main Street and the outer edge of the western wall of

the Massey building on Main Street, and running thence with the property line on Main Street north 54 degs. 52′ West 4.35 feet to a point; thence South 36 degs. 30′ West parallel with the outer edge of Massey's said western wall 65 feet 8¼ inches to a point; thence south 53 degs. 34′ east 4.35 feet to the outer edge of the western wall of the Massey building on Main Street; thence North 36 degs. 30′ East 65 feet 8¼ inches to the beginning."

This is a description of the area in controversy.

On 30 January, 1920, the Gregory Sales Corporation conveyed the property to R. H. Wright by the same description and with the same exception to the warranty.

Wright died 4 March, 1929, and, upon a family agreement and division amongst his heirs at law and distributees settling his estate, quitclaim deeds were exchanged and the Massey property went into the hands of the plaintiffs and the Barbee or Teer property was confirmed to defendants.

Before the death of Rufus Massey and while W. R. Barbee and wife still held their property, Massey brought certain actions against the Barbees with regard to the passageway, and the judgments and judgment rolls in these cases were put in evidence and pleaded in estoppel of the present suit. In view of the decision in this case, it appears essential to refer to only one of them in detail.

In 1902 Rufus Massey sued W. R. Barbee and Virginia Barbee with respect to the passageway now in dispute, and a consent judgment was entered as follows:

"North Carolina　　　　　　　　　　　　Superior Court
　Durham County　　　　　　　　　　　　March Term, 1902.


　"Rufus Massey
　　　　v.　　　　　　　　　　　　　　JUDGMENT
W. R. Barbee and Vir-
ginia Barbee, his wife.


"This cause coming on to be heard before His Honor, Walter H. Neal, Judge Presiding, it is ordered and adjudged, both plaintiff and defendants in open court, through their counsel, consenting thereto, that the defendants are the owners of the lot, the eastern boundary of which is the line 'D to E' ('plastered wall') of the plot hereto attached projected to 'D' in front and to 'E' in the dotted line 'L-M' in rear of said lot which said dotted line is adjudged to be the southern boundary of defendants' lot, and that the plaintiff is the owner of the lot, the western boundary of which is described by the line 'H to M' 'brick wall' of the plot hereto

attached. Said defendants are entitled to hold and possess the lot herein adjudged to belong to them, and the plaintiff is entitled to hold and possess the lot herein adjudged to belong to him, respectively in fee simple; and it is further ordered and adjudged that there shall be built in the basement under the storehouse of said defendants on their lot as indicated on said plot a partition wall to be constructed of wood, brick or other material as the said parties to this action may agree upon, and that the said partition wall shall be built along said dotted lines marked on blueprint 'B-C' that said partition wall and a front and rear door thereto shall be built and maintained at the equal and joint expense of the parties hereto, their heirs and assigns.

"It is further ordered that the said basement hall between the lines marked on said plot designated as 'brick wall' and the said dotted lines 'B-C' shall be for the joint and common use and unobstructed enjoyment of the said Rufus Massey, his heirs, assigns and tenants, and of the said W. R. and Virginia Barbee, their heirs, assigns and tenants.

"It is further ordered that the space between the line 'D-E' and the 'brick wall,' which is now used as a stairway, shall and remain for the joint and common use and unobstructed enjoyment of the said plaintiff, Rufus Massey, his heirs, assigns and tenants, and the defendants, W. R. and Virginia Barbee, their heirs, assigns and tenants.

"It is further ordered and adjudged that the said stairway shall be repaired at the joint and common expense of the parties hereto, their heirs and assigns.

"It is further ordered that the basement hall aforesaid and the portion of said lot between the line 'D-E' and the line marked 'brick wall,' the stairway aforesaid, in said plot shall be used only for ingress and egress by said plaintiff, his heirs and assigns and tenants, and the said defendants and their heirs, assigns and tenants, to and from their respective buildings.

"It is further ordered and adjudged that the plaintiff and defendants pay their respective costs in this action incurred to be taxed by the Clerk of this Court.

"It is further ordered that the Clerk of this Court have this judgment and attached plot registered in the office of the Register of Deeds of Durham County.

(Signed)   WALTER H. NEAL,
Judge Presiding."

Thereafter Massey sued again, alleging, in substance, that the owners of the Barbee building were violating the terms of this consent judgment by putting the passageway to uses not authorized by it. From an adverse judgment Massey appealed to the Supreme Court, which affirmed the

judgment below. The opinion is reported in 138 N. C., 84, 50 S. E., 567. On page 85 of this report will be found a map of the *locus in quo* practically identical with the one used in the case at bar, and reference is made to it here.

The plaintiffs here contend that the effect of this judgment is to create between them and the defendants a common tenancy in fee to the passageway.

In support of their contention that the easement for ingress and egress through the passageway, which is referred to in plaintiffs' pleading as being "through defendants' property," was abandoned and extinguished by the former owner, the defendants introduced evidence tending to show that during his ownership and occupancy of the Massey building and lot, and while he was managing the adjoining Barbee or Teer building for his niece, to whom he had conveyed it, R. H. Wright remodeled the Massey building, converting the building into a hotel except for a store on the first floor. He made an entrance to the hotel on Church Street. He caused the doors of this building giving access to the "passageway" and stairway to be taken out, and the apertures to be filled up solidly with brick. On the interior he had these places plastered over, the baseboards and trim run across, and painted. Relative to this, John H. Gibson, witness for defendants, testified:

"With reference to this passageway we have been talking about, if I understand it, where it is located in that wall. Where the sandwich shop is, you know there is a stairway. When we fixed that building there were some openings in that wall, doors. Mr. Wright came down there one morning and told me, he says, 'John, I want you to have those holes stopped up in that wall up there.' I said, 'What do you want to stop them up for?' He said, 'Well, I believe I will brick them up.'

"I went down in the basement and told the foreman in charge to get some brickmason up there and stop up them holes; couldn't stop it up right then because we were putting in a wall. I closed up the doorway with brick. Mr. Wright told me he wanted to close them up to get rid of all future lawsuits. I remember him saying that. I don't know why he said that. He hit the stick on the floor. The entrances were from Mrs. Teer's building into the old Massey building, but we didn't have anything to do with anything except that wall. After they put the brick in we plastered over them."

Upon the facts before him, the trial judge made findings of fact and concluded that the defendants were owners of the disputed area, and that Massey and his successors in title had only an easement in the passageway for ingress and egress in connection with the Massey building. He further concluded that such easement had been abandoned and extinguished by R. H. Wright, then owner of the dominant tenement, and

was not revived in plaintiffs. From the judgment in accordance with the findings of fact, the plaintiffs appealed, assigning error.

*R. O. Everett for plaintiffs, appellants.* .
*S. C. Chambers and W. P. Farthing for defendants, appellees.*

SEAWELL, J.   In this appeal plaintiffs rely, for the most part, on the consent judgment of 1903, above set out in full, as determining the rights of the parties relative to the passageway in dispute.

First, they contend that the effect of the judgment is to create a fee simple ownership in the parties plaintiff and defendant in that suit, as tenants in common of the whole strip, which is now outstanding in the present litigant parties as successors in title.   Although we get the impression from the findings of fact that the case was not tried on that theory in the court below—the plaintiff there insisting only to be let into the enjoyment of an easement—we have considered this point of view with care and think the contention untenable.

It is conceded that an unlimited conveyance of the beneficial use of property carries with it the *corpus* and, in proper cases, may be regarded as a conveyance in fee.   *Burcham v. Burcham,* 219 N. C., 357, 359, 13 S. E. (2d), 615; *Schwren v. Falls,* 170 N. C., 251, 87 S. E., 49; 19 Am. Jur., 484, sec. 24.   But the consent judgment does not purport to do this, or if it does, the language used is insufficient to accomplish the result.   Taking the judgment as a whole, the use with which it is concerned, and which it purports to preserve and protect, is limited to ingress and egress in connection with access to the two buildings between which the passageway is located—a very limited use of property which could be, and as shown by the evidence actually was, used in other practical ways.

It is true the consent judgment, in positive terms, declares the Barbees to be the owners in fee of their own building, and Massey to be the owner in fee of his building, as to both of which facts there had been no dispute.   But silence on that point with respect to the disputed area could not by inference, or we may say negatively, confer title to it upon either party.   Standing alone it must be construed as dealing only with the question of easement.

We believe this to be consistent with the view taken of this judgment in *Massey v. Barbee,* 138 N. C., 84, 87, 89, 50 S. E., 567, and the construction put on this document by the court below was correct.

The plaintiffs insist that the deed made by the defendants to Dolian Harris, Trustee, to facilitate the division of the Wright property in accordance with the family agreement, conveys the Massey property under a description which covers the *locus in quo.*   It calls for the

Massey line. The defendants as strongly insist that the real Massey line referred to in that deed is the brick wall of the Massey building, for which the deeds in their chain of title call, and this would not cover any part of the disputed area. In this connection it must be kept in mind that this Court, dealing only with matters of law, has not the power with which the court below was vested in dealing with such a question. It is a jury question and a jury has spoken.

Also on this point the trial judge found as a fact that counsel for plaintiffs in open court announced that "the plaintiffs were not seeking and made no claim to the title, ownership, or possession of said strip of land," referring to the *locus in quo,* but only sought to be let into the enjoyment of the easement.

That Rufus Massey had, or acquired by the consent judgment, an easement in the use of the stairway and halls for ingress and egress to and from his building is not questioned. Perhaps an easement of this sort, acquired as this was, could not be made the subject of parol release, except upon the principle of estoppel, since it is an interest in lands within the statute of frauds. *Combs v. Brickhouse,* 201 N. C., 366, 160 S. E., 355.

But such easement may be abandoned or extinguished by unequivocal acts *in pais* inconsistent with further assertion of any rights under it. *Combs v. Brickhouse, supra;* Tiffany, Real Property, 3rd Ed., Vol. 3, sec. 825; 15 C. J., p. 1253, sec. 73; 19 C. J., p. 940, sec. 148; 17 Am. Jur., p. 1026, sec. 142. The standard by which the adequacy of such conduct may be measured may be found in *Furniture Co. v. Cole,* 207 N. C., 840, 846, 178 S. E., 579: "The pertinent decisions in this State are to the effect that an abandonment may be express or implied. Discussing the subject in *Banks v. Banks,* 77 N. C., 186, this Court said: 'To constitute an abandonment or renunciation of claim there must be acts and conduct, positive, unequivocal, and inconsistent with their claim of title. Nor will mere lapse of time or other delay in asserting his claim unaccompanied by acts clearly inconsistent with his rights, amount to a waiver or abandonment.' See, also, *Faw v. Whittington,* 72 N. C., 321; *Aiken v. Ins. Co.,* 173 N. C., 400, 92 S. E., 184; *R. R. v. McGuire,* 171 N. C., 277, 88 S. E., 337. The *McGuire case, supra,* states the principle as follows: 'This brings us to consider the essential elements of an abandonment. It includes both the intention to abandon and the external act by which such intention is carried into effect. There must be a concurrence of the intention with the actual relinquishment of the property. It is well settled that to constitute an abandonment or renunciation of a claim to property there must be acts and conduct, positive, unequivocal, and inconsistent with the claim of title.'" And speaking to the same point, we quote Jones on Easements, section 851: "To make

out a voluntary abandonment of an easement the proof must go to this extent, as declared by *Chief Justice Shaw:* 'First, that the acts relied on were voluntarily done by the owner of the dominant tenement, or by his express authority; secondly, that such party was the owner of the inheritance, and had authority to bind the estate by his grant or release; and thirdly, that the acts are of so decisive a character, as to indicate and prove his intent to abandon the easement.' "

Necessarily the question of abandonment under such circumstances is one for the jury. *McArthur v. Morgan,* 49 Conn., 347; *Russell v. Davis,* 38 Conn., 562; *Holmes v. Jones,* 80 Ga., 659, 7 S. E., 168. It is largely a matter of intention, and while a declaration of such intention will not effect an abandonment, it may be considered in connection with other facts, as, for instance, the acts of the dominant owner, upon the question of intent. *Snell v. Levitt,* 110 N. Y., 595, 18 N. E., 370; 17 Am. Jur., p. 1027. It is clear that R. H. Wright, owner of the dominant tenement and manager of the property he had conveyed to his niece in consideration of love and affection, preferred to abandon the easement rather than have her subjected to a renewal of the lawsuits likely to grow out of its exercise, if fallen into the hands of unfriendly or inconsiderate owners, and in this light, his act in closing and bricking up the openings in the wall giving access to the stairway could scarcely be more unequivocal, or a more complete abandonment of his easement.

It is, of course, impossible, within the limits of this opinion, to make a detailed analysis of the voluminous and painstaking findings of fact upon which the trial judge based his conclusions. It is sufficient to say that careful examination warrants the conclusion that the findings are based on competent evidence.

We find no error, and the judgment is

Affirmed.