JAMES S. CORDELL v. GROVE STONE AND SAND COMPANY, A CORPORATION.

(Filed 26 February, 1958.)

1. **Evidence § 42d: Principal and Agent § 7a—**

    Evidence that an agent of a stone and sand company directed the employees of the company with respect to their work and hired and paid them off, is insufficient predicate for the admission of testimony as to a declaration of the agent that the company had abandoned its mineral leasehold estate in that part of the land in controversy, since, in the absence of evidence to the contrary, such agent has no express or implied authority to affect title to realty of the company.

2. **Abandonment of Property—**

    In order to constitute an abandonment of mineral rights, there must be acts and conduct positive, unequivocal, and inconsistent with the claim of the leasehold estate, and mere lapse of time and the failure to list and pay taxes thereon are insufficient to amount to a waiver or abandonment.

3. **Landlord and Tenant § 1—**

    A leasehold interest for a term of years is a chattel real.

4. **Taxation § 26½—**

    Where the contract between the parties does not require the lessee to list the leasehold estate for taxes, the whole of the land may be listed in the name of the owner of the fee, G.S. 105-301, subsection (8), and the whole of the land is assessable against him.

APPEAL by plaintiff from *Farthing, J.,* November Term 1957 of BUNCOMBE.

This is a civil action instituted in the Superior Court of Buncombe County, North Carolina, on 18 May 1955, to recover damages from the defendant for the alleged unlawful taking of sand, gravel and rock from the premises of the plaintiff during the years 1953 and 1954.

In 1924, E. W. Grove leased to the defendant ten tracts of land located in Buncombe County, North Carolina, consisting of

several hundred acres. The plaintiff now owns 33 acres of land situate in Swannanoa Township in Buncombe County, North Carolina, being a part of Tract 3 included in said lease agreement which originally consisted of 75 acres.

By the terms of the lease the defendant was given the "right of entering in and upon the land * * * described for the purpose of searching for and locating sand, stone and gravel, and the quarrying, removing and preparing for market any and all such sand, stone, gravel or rock which may be found on said premises and to manufacture therefrom such products as it may desire * * * during the period of 50 years from the date hereof, and to mine, quarry, manufacture, remove, sell and dispose of the same; said term to begin from the 1st day of February, 1924 and to end on the 31st day of January, 1974."

The lease was duly recorded in the office of the Register of Deeds for Buncombe County on 7 May 1924, in Book 284, page 437.

On 16 September 1935, the trustees of the E. W. Grove estate conveyed to W. C. Hunnicutt, for a consideration of $245.00, the land contained in Tract 3 as described in the lease agreement.

On 12 November 1935, W. C. Hunnicutt and wife conveyed this identical land to James T. Ellis and wife, Lizzie O. Ellis, the parents of Lillie May Cordell, wife of the plaintiff.

On 15 November 1935, James T. Ellis and wife conveyed the property to James S. Cordell and wife, Lillie May Cordell as tenants by the entirety. This was a deed of gift.

Each one of the foregoing deeds was made subject to the lease executed by E. W. Grove to the defendant and duly recorded.

Later, James S. Cordell and wife separated and agreed upon a division of the land referred to herein. The plaintiff obtained a deed from his wife, dated 12 December 1953, for 33 acres, which is the subject of this action. No reference is made to the E. W. Grove lease in the conveyance from Lillie May Cordell to the plaintiff.

It is stipulated by the parties "that the defendant has never at any time listed or paid taxes on the gravel rights, mineral rights, and other rights in and to the lands described in the complaint at any time prior to removal."

It is further stipulated "that plaintiff has each and every year since the year 1935 listed the lands described in the complaint for taxes, and paid the taxes thereon as assessed against the same."

The defendant in its answer alleged that the lands of plaintiff are subject to its lease. The plaintiff in his reply alleged that the defendant had abandoned the lease as to Tract 3, described therein.

At the close of plaintiff's evidence, the defendant moved for judgment as of nonsuit. The motion was granted, and the plaintiff appeals, assigning error.

*Don C. Young for plaintiff appellant.*
*Lee & Lee for defendant appellee.*

DENNY, J. The plaintiff challenges the correctness of the ruling of the court below in sustaining the defendant's motion for judgment as of nonsuit. He contends that defendant abandoned the E. W. Grove lease with respect to Tract 3, containing 75 acres, the 33 acres involved herein being a part thereof. He further contends that such abandonment occurred prior to 12 November 1935, the date of the deed from W. C. Hunnicutt and wife to James T. Ellis and wife, Lizzie O. Ellis, parents of plaintiff's wife, Lillie May Cordell.

The plaintiff's assignments of error Nos. 1 through 7 are based on exceptions to the refusal of the court below to admit in evidence the testimony of plaintiff as to the contents of an oral conversation he had with one Ernest Jones, who is referred to as the general manager of the defendant corporation by one of plaintiff's witnesses. It is in evidence, without objection, that Mr. Jones directed the employees of the defendant with respect to their work, and that he hired and paid them off. The plaintiff was employed by Mr. Jones to work for the defendant for approximately two months in the Fall of 1935, and while so employed he went to the office of the defendant and talked to Mr. Jones about the property involved herein. Upon objection the plaintiff was not permitted to answer the following question: "* * * what did you say to Mr. Jones about this property and what did he say to you?" If the plaintiff had been permitted to answer he would have testified as follows: "Well, I told him that I was thinking of buying some property to build a house on, and I told him that I understood that Grovestone had a lease on this property and I wanted to know what chance there was that they would ever bother it. * * * And he asked me where the property was located, and I told him it was down below the State Farm property, and he said, 'Well, that property down there has been abandoned * * * we have never run any tests for any stone, we are not interested in whether there is any stone there or not, that our purpose for the lease to start with was to keep anybody from coming in and giving us competition.' " Q. "Mr. Cordell, pursuant to this conversation that you had with the general manager, Mr. Jones, of the defendant, did you purchase this property?" Defendant's objection sustained. Exception No. 2. The answer, if permitted to answer, would have been, "Yes, I bought the property after that."

The additional excluded evidence was similar to that quoted above and related to the same conversation.

Conceding that Mr. Jones made the statement as plaintiff contends, the question is whether the statement is admissible against the defendant.

In the case of *Commercial Solvents v. Johnson,* 235 N.C. 237, 69 S.E. 2d 716, Johnson, J., speaking for the Court, said: "While proof of agency, as well as its nature and extent, may be made by the direct testimony of the alleged agent (*Jones v. Light Co.,* 206 N.C. 862, 175 S.E. 167), nevertheless it is well established that, as against the principal, evidence of declarations or statements of an alleged agent made out of court is not admissible either to prove the fact of agency or its nature and extent. *West v. Grocery Co.,* 138 N.C. 166, 50 S.E. 565; *Parrish v. Mfg. Co.,* 211 N.C. 7, 188 S.E. 817; 1 Meacham on Agency, 2d Ed., Sec. 285.

"And in applying this rule, ordinarily the extra-judicial statement or declaration of the alleged agent may not be given in evidence, unless (1) the fact of agency appears from other evidence, and also unless it be made to appear by other evidence that the making of such statement or declaration was (2) within the authority of the agent, or (3) as to persons dealing with the agent, within the apparent authority of the agent," citing numerous authorities.

There is no evidence in this record which tends to show that Ernest Jones had any authority, as the agent of the defendant, other than to perform the duties incident to the actual operations of the Grove Stone and Sand Company in removing sand, gravel and rock from its leased premises. Moreover, it does not appear that such duties would ordinarily or customarily include the authority to bind his principal with respect to real estate transactions.

In the case of *Tuttle v. Building Corp.,* 228 N.C. 507, 46 S.E. 2d 313, Barnhill, J., later C.J., quoted with approval from 2 Fletcher, Cyc. Corporation, 508, Section 605, the following: "The president of a corporation has no implied or inherent authority, merely by virtue of his office or as incident thereto, to sell and convey or to contract to sell the real or personal property of the corporations, without authority so to do from the board of directors, even though he is both president and general manager, and over a period of years is left with the entire management and control of the affairs of the corporation. * * *" The foregoing rule, however, is not inflexible. Where a corporation is created for the primary purpose of buying and selling real estate in which its officers are actively engaged, with the silent approval or acquiescence of the board of directors, authority to do so will be implied. *Tuttle v. Building Corp., supra; Brimmer*

*v. Brimmer,* 174 N.C. 435, 93 S.E. 984; *Watson v. Manufacturing Co.,* 147 N.C. 469, 61 S.E. 273.

In *R. R. v. Smitherman,* 178 N.C. 595, 101 S.E. 208, the Railroad Company had built a new depot, and the owner of the fee claimed that the property on which the old depot was located had reverted to him as owner of the fee by reason of nonuser for general railroad purposes. The defendant's witness, W. I. Myrick, was permitted to testify that plaintiff's local passenger and freight agent, S. T. Brown, had made a statement to the effect that the property no longer belonged to the Railroad Company, and it would have nothing more to do with it, as it was the property of Mr. Smitherman. The agent delivered the key to the old depot to the witness at that time. Plaintiff's objection to the admission of this evidence was overruled. This Court said: "The witness, S. T. Brown, * * * had no authority, express or implied, to surrender possession of the old building to the defendant, or to any one under his direction, nor was any declaration made by him to Myrick, as to what the plaintiff had done about that building, and to the effect that it had been surrendered to the defendant and belonged to him, admissible against the plaintiff, who was his principal. He had no real or apparent authority to give up his principal's property, so far as this record shows, and certainly none to declare what the principal had done in the past respecting it. * * *

"But, however, the fact may be as to the authority of the agent to surrender the property, his declaration to Myrick, if made, was incompetent to prove it. We have seen that he cannot enlarge his authority by his own declarations and this Court has recently stated that 'the authorities in this State are all to the effect that declarations of an agent made after the event, and as mere narrative of a past occurrence, are not competent against the principal.' *Johnson v. Ins. Co.,* 172 N.C. 142, citing *Smith v. R. R.,* 68 N.C. 115; *Rumbough v. Improvement Co.,* 112 N.C. 751; *Morgan v. Benefit Society,* 167 N.C. 265."

In the case of *Smith v. R. R.,* 68 N.C. 107, Rodman, J., speaking for the Court, said: "The power to make declarations or admissions in behalf of a company as to events or defaults that have occurred and are past, cannot be inferred as incidental to the duties of a general agent to superintend the current dealings and business of the company."

The ruling of the court below, in excluding the evidence upon which the appellant bases his assignments of error Nos. 1 through 7, will be upheld.

This Court held in *Banks v. Banks,* 77 N.C. 186, "To constitute an abandonment or renunciation of claim there must be acts and conduct positive, unequivocal, and inconsistent with his claim

of title. Nor will mere lapse of time or other delay in asserting his claim, unaccompanied by acts clearly inconsistent with his rights, amount to a waiver or abandonment." *Furniture Co. v. Cole*, 207 N.C. 840, 178 S.E. 579; *Miller v. Teer*, 220 N.C. 605, 18 S.E. 2d 173.

The evidence on this record is not sufficient to take the case to the jury on the question of abandonment. Moreover, the question as to the right to terminate the E. W. Grove lease by reason of nonuser with respect to the various tracts included in the lease, was decided in favor of this defendant in the case of *Alexander v. Sand Co.*, 237 N.C. 251, 74 S.E. 2d 538, in which case, Devin, C. J., said: "* * * the failure to list for taxation may not be regarded as conclusive on the question of the right of the defendant to enter upon the land of the plaintiffs or as determinative of the rights of the parties under the lease. 1 A.J., 12."

Furthermore, it is provided in G.S. 105-301, subsection (1), "Except as hereinafter specified, real property shall be listed in the name of its owner; and it shall be the duty of the owner to list the same. * * *" Subsection (8) provides, "When land is owned by one party and improvements thereon or mineral, timber, quarry, water power, or similar rights therein are owned by another party, the parties may list their interests separately or may, in accordance with contractural relations between them, have the entire property listed in the name of the owner of the land."

The defendant is not required under the terms of the E. W. Grove lease to list and pay the taxes on the leased premises, as was the case in *Investment Co. v. Cumberland County*, 245 N.C. 492, 96 S.E. 2d 341. Moreover, it seems to be the general rule that a leasehold interest for a term of years is a chattel real, and for the purposes of taxation, in the absence of a provision in the lease to the contrary, the whole of the land is assessable against the owner of the fee. Anno.—Tax—Leasehold Interest, 59 A.L.R. 702.

The judgment of the court below is
Affirmed.