W. R. ALLEN AND WIFE, ANNETTE ALLEN v. ROY LEE DUVALL, MELBA JEAN DUVALL, AND CHARLIE BYRD DUVALL

No. 8230SC786

(Filed 19 July 1983)

1. **Slander of Title § 1— elements**
     The elements of slander of title, which is a part of the common law of this State, are (1) the uttering of slanderous words in regard to the title of one's property, (2) the falsity of the words, (3) malice and (4) special damages.

2. **Easements § 4.1; Slander of Title § 1— description of easement too vague—new trial to determine easements by necessity or prescription**
     The falsity of defendant's words in a slander of title action depended on the validity of the title to plaintiff's easements across the property of the defendants. Pursuant to *Oliver v. Ernul,* 277 N.C. 591 (1971), which overrules *Borders v. Yarbrough,* 237 N.C. 540 (1953), the defendants' predecessor in title did not reserve an easement in that the description was too vague. In that

Allen v. Duvall

there was sufficient evidence for the court to find that the easements had been established by prescription or necessity, there must be a new trial in order to allow the court to make sufficient findings of fact on the evidence as to an easement by prescription or by necessity.

**3. Easements § 11— insufficient evidence of abandonment of easement**

Where an easement was still a valuable adjunct to plaintiffs' property, the fact that they did not maintain the road for a period when no one was living on plaintiffs' land need not be construed as evidence that they intended to abandon the right to use the easement.

**4. Slander of Title § 1— sufficiency of evidence of malice**

Evidence that the deed to defendants' property referred to an easement across their property and that a right-of-way had been used to cross the property for many years, was evidence from which the court could find that there was probable cause for defendant Duvall to believe the right-of-way did exist when he stated that it did not.

**5. Evidence § 31— best evidence rule not applicable to contract between plaintiff and third party**

Where there was no evidence that there was a written contract between the plaintiffs and a third party, there was no error in the court's findings that the plaintiffs had made a contract to sell the property to the third party. The fact that the third party might be able to plead the statute of frauds if the plaintiffs sued him does not affect the plaintiffs' claim against the defendant.

**6. Slander of Title § 1— damages proper**

In plaintiffs' action for slander of title, the trial court did not err in calculating the damages for the loss of the use of money at thirteen per cent of $13,000.00 annualized from the date a third party refused to pay the full purchase price of a parcel of land to plaintiffs due to defendants' statements to the third party concerning the title to the property. Nor did the court err in awarding damages for the expenses the plaintiffs incurred in having the easement surveyed. The court was further correct in failing to include in the award of damages plaintiffs' attorney fees.

APPEAL by defendants from *Thornburg, Judge.* Judgment entered 11 February 1982 in Superior Court, HAYWOOD County. Heard in the Court of Appeals 17 May 1983.

This is an action for slander of title tried before the court without a jury. The plaintiffs' evidence showed that they owned a tract of land adjacent to a tract of land owned by the defendants. The plaintiffs contended they had an easement over the land owned by the defendants. This claim to an easement is based in part on a deed which was executed in 1914 to a predecessor in title of the defendants. The deed contained the following reservation:

"Reserving however a right of way for a road for wagons and all purposes, beginning at G.L. Allen's line and running up on East side of creek over this land; also a right of way for road to be kept open from the above road out to the Beaverdam Road near Austin's Chapel, or school house."

The deed to the defendants contained the following reference:

"SUBJECT TO road rights of way set out in Deed dated October 7, 1914, from R.G. White and wife to W.S. McCracken registered in Deed Book 43, page 401. . . ."

Three witnesses testified as to the location of the roadway across the defendants' land. Their testimony was to the effect that since 1914 there had been a road following a certain course across the defendants' property with another road running off the first road to the Beaverdam Road. A surveyor testified as to a survey he had made of the roads as shown by the plaintiffs' evidence. A map of the roads was introduced into evidence.

The plaintiffs' evidence showed further that they had made a contract to sell their property to Bud Mehaffey for $25,000. After the contract was made the defendant told Mr. Mehaffey that there was not an easement of right of way across the defendants' land and that if he purchased the land from the plaintiffs, he would not have a right of way. Mr. Mehaffey paid the plaintiffs $12,000 on the agreed purchase price and held back $13,000 until he could be assured he would have a right of way easement if he bought the land from the plaintiffs.

The defendant Roy Lee Duvall testified that he had told Mr. Mehaffey the plaintiffs did not have a right of way from the Beaverdam Road. Mr. Duvall testified further that when he bought the property the lawyer who searched the title did not tell him there was such a right of way. He had put a gate across the road and it had not been used since he purchased the land in 1970. Other witnesses testified for the defendants that the road had not been maintained or used for many years.

The court found that there is a recognizable roadway which is the first easement reserved in the deed to defendants' predecessor in title, and that a second easement exists from Beaverdam Road to the first road. The court further found that the plaintiffs entered into a contract to sell their property to Bud

Mehaffey for $25,000; that Roy Lee Duvall told Bud Mehaffey the plaintiffs did not have an easement of right of way across the defendants' property; that this statement was false and Roy Lee Duvall knew it was false; and that the statement was made maliciously. The court entered a judgment holding that the plaintiffs had right of way easements over the property of the defendant and awarding damages against the defendant Roy Lee Duvall.

The defendants appealed.

*Erwin, Winner and Smathers, by Patrick U. Smathers, for plaintiff appellees.*

*Redmond, Stevens, Loftin and Currie, by Thomas R. West, for defendant appellants.*

WEBB, Judge.

[1]  This appeal brings to the Court an action for slander of title. Slander of title actions are rare in this state. Our research has revealed only three cases in which it is mentioned. *See Texas Co. v. Holton,* 223 N.C. 497, 27 S.E. 2d 293 (1943); *Cardon v. McConnell,* 120 N.C. 461, 27 S.E. 109 (1897) and *McElwee v. Blackwell,* 94 N.C. 261 (1886). Slander of title is recognized as a part of the common law. *See* 50 Am. Jur. 2d, *Libel and Slander,* § 541 at page 1060 and 53 C.J.S., *Libel and Slander,* § 269 at page 391. We believe it is a part of the law of this state. The elements of slander of title are (1) the uttering of slanderous words in regard to the title of someone's property, (2) the falsity of the words, (3) malice and (4) special damages.

[2]  In this case the defendants argue the Superior Court was in error because the plaintiffs did not prove the words of Roy Lee Duvall were false, that he uttered them with malice, or that the plaintiffs suffered any damage. The falsity of Mr. Duvall's words depends on the validity of the title to the plaintiffs' easements across the property of the defendants. The defendants argue that the description in the deed of their predecessor in title is too vague to create an easement. We believe that pursuant to *Oliver v. Ernul,* 277 N.C. 591, 178 S.E. 2d 393 (1971), we must hold that the deed to the defendants' predecessor in title did not reserve an easement. In that case the grantor purported to give an easement described as follows:

"We, the undersigned, do hereby give, grant, bargain and convey a 20-foot rightaway for public use for now and forevermore —

Described as follows:

In Morehead Township, in the Mansfield Section, lying between A and E.C. Railway on the North Hwy 70 on the South. The Mike Ebron Subdivision Running a Southerly direction Bounded on the East by George Huntley line and on the West, by Fred Ernul, Garfield Oliver and M. L. Mansfield line."

Our Supreme Court held this was not a sufficient description because the description contained "no beginning and no ending." As we read *Oliver* there can be little left to inference for a description of an easement to be good. As Justice Sharp (later Chief Justice) pointed out in her concurrence, it could have been inferred from the description in *Oliver* that the beginning was Highway 70 on the south and A and E.C. Railroad on the north, but the majority would not make this inference.

Were it not for *Oliver*, we believe the description in this case might be held to create an easement pursuant to *Borders v. Yarbrough*, 237 N.C. 540, 75 S.E. 2d 541 (1953). We believe that case holds that if an easement is reserved and a specific part of the servient property is used for the easement with the acquiescence of the parties, this makes the description good. That is what the evidence shows in this case. The difficulty with following *Borders*, however, is that the evidence also showed this in *Oliver*. The Supreme Court in *Oliver* cited *Borders* but did not discuss it. Apparently they gave no credence to the principle that an otherwise vague description can be made good by the use and acquiescence of the parties. We believe *Borders* was overruled by *Oliver*. We believe pursuant to *Oliver* that the description in the 1914 deed in the present case is too vague to allow identification with reasonable certainty.

We believe there may have been sufficient evidence for the court to find that the easements had been established by prescription. *See Potts v. Burnette*, 301 N.C. 663, 273 S.E. 2d 285 (1981) and *Dulin v. Faires*, 266 N.C. 257, 145 S.E. 2d 873 (1966) for the proof necessary to support an easement by prescription. The

court did not make any findings of fact as to prescription, however. We also believe the evidence may support findings of fact that easements by way of necessity had been established. *See Oliver, supra,* and *Dorman v. Ranch, Inc.,* 6 N.C. App. 497, 170 S.E. 2d 509 (1969) for the proof necessary to establish an easement by way of necessity. The court did not make any findings of fact as to an easement by way of necessity. We hold that there must be a new trial since the court did not make sufficient findings of fact on the evidence as to an easement by prescription or by necessity.

[3] In light of the fact that there must be a new trial, we shall discuss some of the defendants' assignments of error, as the questions they raise may recur. The defendants argue it was error not to find the plaintiffs had abandoned the easement. An abandonment requires an intention to relinquish a right in property and the external acts necessary to effectuate that intent. *See Miller v. Teer,* 220 N.C. 605, 18 S.E. 2d 173 (1942). There was evidence that the plaintiffs had not maintained the roads for several years prior to the commencement of the action. We do not believe this evidence required the court to find the plaintiffs had abandoned the easement. So long as there was no one living on the plaintiffs' land, there was no need for the plaintiffs to maintain the road. It was still a valuable adjunct to the plaintiffs' property, however, and the fact that they did not maintain the roads need not be construed as evidence they intended to abandon the right to use them.

[4] The defendants also contend there was not sufficient evidence of malice to establish a claim for slander of title. In order to succeed in an action for slander of title, the plaintiffs must prove that the defendant uttered the false words maliciously, that is, there was no probable cause for the defendant's belief. If the defendant's assertion was made in good faith, no action will lie. *See Cardon v. McConnell, supra.* In this case the evidence showed that the deed to the defendants referred to an easement across their property. There was evidence that a right of way had been used across the property for many years which was known to the defendant Roy Lee Duvall. This is evidence from which the court could find there was not probable cause for Roy Lee Duvall to believe the right of way did not exist. The fact, as we have held, that the reservation in the deed did not create an easement is

evidence that Mr. Duvall acted in good faith as is other evidence introduced by Mr. Duvall. This element of the case may be determined at the next trial.

[5]  The defendants also argue that it was error for the court to find as a fact that the plaintiffs had made a contract to sell the property to Mr. Mehaffey. They contend that the best evidence rule was violated in that the original written contract was not offered into evidence. We do not believe the best evidence rule applies. There was no evidence that there was a written contract between the plaintiffs and Mr. Mehaffey. *See State v. Miday*, 263 N.C. 747, 140 S.E. 2d 325 (1965). The fact that Mr. Mehaffey might be able to plead the statute of frauds if the plaintiffs had sued him does not affect the plaintiffs' claim against the defendants. *See Childress v. Abeles*, 240 N.C. 667, 84 S.E. 2d 176 (1954).

[6]  The defendants assign error to the amount of damages. We believe that the evidence which showed Mr. Mehaffey had agreed to pay $25,000 for the property but would pay only $12,000 pending the plaintiffs' assuring him of a good title to the property is evidence from which the court could conclude the plaintiffs lost the use of $13,000. There was testimony that the interest rate on certificates of deposit was 13% at the time Mr. Mehaffey refused to pay the full purchase price. The court calculated the damages for the loss of the use of the money at 13% of $13,000 annualized from the date Mr. Mehaffey refused to pay. In this we find no error.

The court also awarded damages for the expenses the plaintiffs incurred in having the easement surveyed. The plaintiffs' evidence showed this was necessary to prepare for the action for slander of title. We do not believe the expenses of preparing for an action in court is such a natural and probable result of the action of Roy Lee Duvall that it was properly considered as a part of the damages.

The plaintiffs have cross-assigned error to the court's failure to include their attorney fees as part of the damages. We believe the court was correct in refusing to do so. The plaintiffs argue that as a direct result of the slander of their title, they had to retain attorneys. If this were a proper element of damages, it should be included in every case in which a person retains an at-

torney as a result of some damage done to him. We believe the court was correct in not including legal fees as a part of the damages.

For the reasons stated in this opinion, we hold there must be a new trial.

New trial.

Judges ARNOLD and BRASWELL concur.