IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-450

No. COA20-261

Filed 7 September 2021

Mecklenburg County, No. 18-CVS-14058

ERIC E. CRAIG and wife, GINA D. CRAIG, Plaintiffs,

v.

BETTY BLAIR NEAL, Defendant,

and

JACK HUDSON and wife, GINNER HUDSON, and JAMES F. SHUMAN, JR. and wife, ANNE MARIE P. SHUMAN, Nominal Defendants.

Appeal by Plaintiffs from order entered 28 October 2019 by Judge Louis A. Trosch in Mecklenburg County Superior Court. Heard in the Court of Appeals 9 February 2021.

*Law Office of Kenneth T. Davies, P.C., by Kenneth T. Davies, for the Plaintiffs-Appellants.*

*Johnston, Allison & Hord, P.A., by Mary Fletcher Mullikin and Martin L. White, for the Defendant-Appellee*

DILLON, Judge.

I. Background

¶ 1        Plaintiffs own a 2.57-acre lot located within Country Colony, a 17-lot residential subdivision in Charlotte.  Defendant owns three residential lots adjacent to Plaintiffs' lot, but which lie *outside of* the Country Colony subdivision.  Their dispute concerns their respective rights, if any, to use a certain right-of-way depicted on a plat recorded in 1952 when Plaintiffs' lot and Defendant's three lots were part of a larger tract.

¶ 2        Prior to 1952, Plaintiffs' lot and Defendant's three lots were part of a larger 65-acre tract of land owned by the Newsons, a married couple.  In 1952, a plat (the "1952 Plat") was recorded depicting a 7.585-acre tract carved out from the 65-acre tract. The 1952 Plat is reproduced below:



This 1952 Plat was filed in anticipation of the Newsons conveying part of their 65-acre tract – specifically this 7.585-acre tract – to another couple, the Penders, and retaining the remaining 57 acres for the development of Country Colony. The 1952 Plat depicts a new right-of-way, labeled as "Country Lane," straddling the boundary separating the 7.585-acre tract shares from the future Country Colony subdivision. Based upon the 1952 Plat, Country Lane is depicted as a right-of-way sixty (60) feet in width, with thirty (30) feet in width on either side of the boundary line.

¶ 3        Over the course of time, this 7.585-acre tract was subdivided into lots, with Defendant acquiring three of said lots. Country Colony was developed into 17 lots, with Plaintiffs coming to own the lot adjacent to Defendant's property, along the bend of County Lane.

¶ 4        Also, at some point, two gravel roads were created within the Country Lane right-of-way. One of these roads provides Defendant access to her lots from Kuykendall Road. In 2018, Plaintiffs erected a fence on their lot that extended across the gravel road, depriving Defendant's ability to use the road to access Kuykendall Road from her lots. Plaintiffs' act led to the commencement of this action.

¶ 5        The matter was tried without a jury. Plaintiffs argued at trial, in part, that any right that Defendant might have had in Country Lane was extinguished by operation of the Marketable Title Act. The trial court, however, determined that Country Lane is, in fact, a public right-of-way, owned by the City of Charlotte. The trial court concluded the Marketable Title Act does not apply and ordered Plaintiffs to remove the fencing. Plaintiffs timely appealed.

## II. Standard of Review

¶ 6        Since this matter was tried by the trial judge, and not by a jury, "the trial court is the fact finder; and on appeal, [we] are bound by the trial court's findings if competent evidence in the record supports those findings." *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000). However, we review *de novo* the trial

court's conclusions of law and whether those conclusions are supported by the findings of fact. *See Kirby Bldg. Sys., Inc. v. McNeil*, 327 N.C. 234, 241, 393 S.E.2d 827, 831 (1990).

## III. Summary of Opinion

¶ 7     The parties dispute their respective rights to use the Country Lane right-of-way. Accordingly, "Country Lane," as used in this opinion, refers specifically to the 60-foot wide, right-of-way area *as depicted on the 1952 Plat*, and not to the gravel roads themselves or to any other area. [1]

¶ 8     The trial court determined that Country Lane is a public right-of-way, owned by the City of Charlotte, based on its finding that the Newsons dedicated Country Lane to the city when they recorded the 1952 Plat. Based on this determination, the trial court declared that all parties (and the public) have the right to use all of the Country Lane right-of-way.

¶ 9     We conclude, however, that the trial court's findings and the undisputed facts do not support the trial court's finding that the Newsons intended to dedicate Country Lane to the City of Charlotte or any other governmental body back in 1952. Rather,

---

[1] There was also evidence that a paved road extends along the southern border of the Country Colony subdivision *west of* Lot 10. This paved road was formally offered to and accepted by the City of Charlotte by the impacted lot owners. This paved road is also called Country Lane and does connect with the Country Lane right-of-way as depicted on the 1952 Plat. However, this matter only concerns the non-paved portion of Country Lane, which is the right-of-way depicted in the 1952 Plat.

we conclude the Newsons intended to create private easement rights for the benefit of the owners of the land adjacent to Country Lane as a matter of law. It may be that the City of Charlotte has come to own all or portions of Country Lane based on *some other legal theory.* However, no other theory has been argued in this appeal; the findings and the evidence in the record do not conclusively establish the City's ownership as a matter of law; and the City is not a party to this action.

¶ 10 Further, we conclude the parties have private appurtenant easement rights to portions of Country Lane not on their respective lot(s) for ingress and egress to the public roads.[2]

## IV. Analysis

### A. No Substantial Evidence That Country Lane Is a Public Right-Of-Way

¶ 11 The trial court found that the Newsons (who owned the original 65-acre tract) dedicated Country Lane as a *public road* in 1952. Specifically, the trial court found:

> The process followed by the developer of Country Colony [the Newsons] was typical for plats filed in the 1950s when rights of way were offered for *dedication* to the public. In the case, the recordation of the [1952 Plat] was an offer to dedicate Country Lane to the public.

(Emphasis added.) This theory of "dedication" formed the sole theory by which the

---

[2] Nominal defendants (the Hudsons and the Shumans) own other lots that Country Lane crosses. The Hudsons own Lot 11 within Country Colony to the north of Plaintiffs' lot on the west side of Country Lane. The Shumans own a lot outside of Country Colony to the north of Defendant's lots on the east side of Country Lane.

trial court determined Country Lane to be a public road owned by the City of Charlotte.

¶ 12 The term "dedication" refers to the process by which an owner/developer of real estate offers, either formally or informally, some portion of his development *to the general public*, typically for a road, and said offer is accepted by the governing authority. *See Spaugh v. Charlotte*, 239 N.C. 149, 159-60, 79 S.E.2d 748, 756 (1954).[3]

¶ 13 A dedication *offer* can be made either expressly or through implication. *Id.* at 159, 79 S.E.2d at 756 (stating that "[d]edication may be either in express terms or may be implied from conduct on the part of the owner"). But a dedication is only completed when the developer's offer is *accepted* by the responsible public authority. *Wofford v. Highway Commission*, 263 N.C. 677, 683, 140 S.E.2d 376, 381 (1965).

¶ 14 We conclude that no substantial evidence exists in the record to support the trial court's finding that the Newsons intended to offer, expressly or by implication, Country Lane *to the public*. Rather, the 1952 Plat and other documents filed contemporaneously demonstrate that the Newsons intended to create Country Lane as a *private* appurtenant easement for the benefit of the subdivided 7.585-acre tract and the to-be-developed Country Colony tract.

---

[3] If an easement is created for the benefit of the property owners within the development only, such grant is not technically a "dedication." That is, the term "dedication" technically refers to a grant of rights to the public at large. It is not the appropriate term when referring to the creation of *private* easement rights.

¶ 15     Specifically, no evidence tends to show the Newsons expressly offered to dedicate Country Lane for public use.  The 1952 Plat merely identifies Country Lane as a "R/W," meaning right-of-way, without any express indication that the right-of-way was dedicated for public use.  The trial court did determine, though, that the Newsons *impliedly* offered for dedication Country Lane when they recorded the 1952 Plat.

¶ 16     Our Supreme Court has recognized that where an owner of land files a plat showing land subdivided "into lots and streets, and sells and conveys the lots or any of them with reference to the plat, nothing else appearing, he thereby dedicates the streets . . . [to] the public." *Blowing Rock v. Gregorie*, 243 N.C. 364, 367, 90 S.E.2d 898, 901 (1956).  However, our Supreme Court has also recognized that an owner filing a plat may be deemed to have granted a private easement solely to the adjacent landowners and *not* a grant to the public:

> Where lots are sold and conveyed by reference to a map or plat which represents a division of a tract of land into streets, lots, parks and playgrounds, a purchaser of a lot or lots acquires the right to have the streets, parks and playgrounds kept open for his reasonable use, and this right is not subject to revocation except by agreement. It is said that such streets, parks and playgrounds are *dedicated* to the use of lot owners in the development. In a strict sense it is not a dedication, for a dedication must be made to the public and not to a part of the public. It is a right in the nature of an easement appurtenant.

*Realty Co. v. Hobbs*, 261 N.C. 414, 421, 135 S.E.2d 30, 35-36 (1964) (citations omitted).

¶ 17        In reaching its determination that the Newsons intended an offer *to the public* when they recorded the 1952 Plat, the trial court relied on "expert" testimony. The opinion was essentially that the manner in which the 1952 Plat and another plat filed the same year laying out the 17 lots of Country Colony was the manner in which real estate developers during that time would go about dedicating a street *to the public*. We conclude, however, while expert opinion is admissible on the proper legal interpretation of recorded real estate documents, the "expert" opinion offered at the trial below was clearly not reliable. Specifically, the plats upon which the expert opinion was based are materially different from the 1952 Plat. The plats relied upon depicted subdivisions where the property lines for the lots did not extend to the center line of the streets. Rather, the streets depicted were not part of any lot to be sold. And no lots were sold in those subdivisions which included ownership of any part of the streets depicted on the plats. Below is one of the plats relied upon by the expert; specifically, a plat from 1952 depicting the Eastway Park subdivision in Charlotte, recorded in Map Book 1487, Page 465 in the Mecklenburg County Registry:



It could certainly be "implied" from the above plat that the developer of Eastway Park intended the streets depicted to be open to the public, in large part because these streets are not part of anyone's private lot. The other plats the expert relied upon also depict streets that are not part of any lot that was sold.[4]

---

[4] These other plats include (1) a plat recorded in 1952 in Map Book 1487, Page 457, showing Shamrock Gardens subdivision; (2) a plat recorded in 1952 in Map Book 1487, Page 461, showing land being subdivided into two lots; and (3) a plat recorded in 1952 in Map Book 1487, Page 463, showing Lakeview Park subdivision.

¶ 18      The 1952 Plat that created Country Lane, though, depicts the boundary line subdividing the 7.585-acre tract from the 57 acres which would become Country Colony running down the middle of the Country Lane right-of-way.  Again, this 1952 Plat was recorded in January 1952.  A month later, in February 1952, when the Newsons actually conveyed the 7.585-acre tract to the Penders, the deed description included half of the Country Lane right-of-way, describing a boundary as running along "the center of Country Lane."

¶ 19      Also in February 1952, the Newsons filed another plat depicting the to-be-developed Country Colony subdivision.  This map of Country Colony provides further proof that the Newsons did not intend to dedicate Country Lane to the public.  This map shows Country Colony's 17 lots (including Lot 10 now owned by Plaintiffs).  It depicts the 7.585-acre tract adjacent to Country Colony as land owned by "John R. Pender."  But this plat does not show the Country Lane right-of-way.  The Country Colony subdivision plat is shown below.



¶ 20    We further note that the Newsons could not have intended to dedicate Country Lane to the City of Charlotte, as this area of Mecklenburg County was not annexed into the City of Charlotte until the 1980s, decades after the 1952 Plat was recorded. All of the trial court's findings regarding the City's involvement with Country Lane concern events that occurred after 1980.

## B. The 1952 Plat Did Create Private Easement Rights

¶ 21    We conclude that the recording of the 1952 Plat in January 1952, and the conveyance of the 7.585-acre tract to the Penders referencing the 1952 Plat the

following month, created private easement rights in Country Lane. *See Hobbs*, 261 N.C. at 421, 135 S.E.2d at 36.

¶ 22    It is true that when the Newsons later sold lots in Country Colony, none of the deeds conveying these lots ever referred to the 1952 Plat. Rather, those deeds referred to the *Country Colony map*, which does not depict Country Lane. However, before the Newsons ever conveyed any lot in Country Colony, they conveyed the 7.585-acre tract to the Penders by deed which did reference the 1952 Plat.

¶ 23    Based on *Hobbs* and other Supreme Court jurisprudence, we hold that the conveyance of the 7.585-acre tract by the Newsons to the Penders included, by implication, private easement rights in Country Lane for the benefit of the 7.585-acre tract and reserved private easement rights in Country Lane for the tract which would later become Country Colony for the lots fronting on Country Lane. Accordingly, when the Newsons later conveyed lots in Country Colony (including Lot 10 now owned by Plaintiffs), the grantees of those lots along Country Lane took *subject to* the appurtenant easement rights of the owner(s) of the 7.585-acre tract. Likewise, these grantees received appurtenant easement rights to the portion of Country Lane on the other side of the boundary line of the 7.585-Acre tract.

C. Current Rights in Country Lane

¶ 24    Having concluded that the predecessors-in-title to Plaintiffs' lot and Defendant's three lots had appurtenant easement rights in Country Lane, we next consider whether those rights still exist.

¶ 25    Private easement rights may be extinguished in a number of ways. For instance, such rights may be extinguished by abandonment, *see Miller v. Teer*, 220 N.C. 605, 612, 18 S.E.2d 173, 178 (1942), by the servient owner's adverse use for twenty years, *see Duke Energy Carolinas, LLC v. Gray*, 369 N.C. 1, 7, 789 S.E.2d 445, 449 (2016), or by the Marketable Title Act, *see* N.C. Gen. Stat. § 47B-2 (2018) (stating if a property owner has an unbroken chain of title dating back thirty years, earlier rights and interests in the land are extinguished, barring a few exceptions).

¶ 26    Here, the trial court, as factfinder, found that "[t]here was no evidence that any portion of Country Lane has been abandoned by [any of the parties]." No party challenges this finding as erroneous. Therefore, it is binding on appeal.

¶ 27    Plaintiffs, though, argue that Defendant lost any right to use the portion of Country Lane located on their Lot 10 based upon operation of the Marketable Title Act. We disagree.

¶ 28    This Act provides that an owner of land takes free of nonpossessory interests that others may have but which do not appear in the owner's chain of title going back thirty (30) years. N.C. Gen. Stat. § 47B-2. Here, the trial court found that Defendant (and her family) have been continuously using the gravel road since 1966 which

Plaintiffs blocked in 2018. Based on this finding, we conclude that Defendant's private easement rights in the portion of Country Lane on Plaintiffs' Lot 10 have not been extinguished by operation of the Marketable Title Act. We so conclude based on an exception under N.C. Gen. Stat. § 47B-3(3), which provides that the Act shall not affect or extinguish "interests [or] claims . . . of any person who is in present, actual and open possession of the real property so long as such person is in such possession."

Plaintiffs argue that they own one of the gravel roads based on the theory of adverse possession. We presume that Plaintiffs are contending that they now have fee simple rights to all portions of this road, including the portions on Defendant's lot. We reject this argument as there is no evidence that this use was hostile, as in, exclusive. *See State v. Brooks*, 275 N.C. 175, 180, 166 S.E.2d 70, 73 (1969) (recognizing that an element of adverse possession is that the possession must be "hostile"). Rather, Plaintiffs' use of this road was not hostile, as they have always had private easement rights to this road, as it lies within Country Lane, and the evidence showed that Defendant used the road.

We do not address whether the parties, or some of them, may have lost easement rights in the undeveloped portions of Country Lane (areas where there is no gravel road established) where it could be shown that the fee simple owner of said portions denied access to the easement owner(s). The trial court made no findings in

this regard, and no party has made any argument on appeal that rights in undeveloped portions of Country Lane have been lost through adverse possession.

V. Conclusion

¶ 31        The trial court correctly concluded that the parties have the right to use Country Lane but that the court erred in its reasoning.  Specifically, the trial court erred in concluding that Country Lane is a public road based upon the 1952 Plat.  Notwithstanding, we conclude that the parties have private, appurtenant easement rights in Country Lane.  No party may interfere with the easement rights in Country Lane of the other parties.

¶ 32        Accordingly, we reverse the trial court's order declaring Country Lane to be a public street or road.  We, otherwise, affirm the trial court's order declaring the parties' rights in Country Lane, but for the reason that each adjoining property owner was granted and possesses private, appurtenant easement rights to the other parties' lots within the Country Lane right-of-way.

AFFIRMED AS MODIFIED IN PART, REVERSED IN PART, AND REMANDED

Judges TYSON and ARROWWOOD concur.